Opinion
 

 MORRISON, J.
 

 Defendant was convicted by jury of forcible rape (Pen. Code, § 261, subd. (a)(2)) and the jury found true the allegation that defendant had two serious felony convictions (Pen. Code, § 667, subds. (a), (b)-(i)). Sentenced to an indeterminate sentence of 25 years to life and a determinate sentence of 10 years, defendant appeals.
 

 In the published portion of this opinion we reject defendant’s constitutional challenge to Evidence Code section 1108, which permits, in a criminal
 
 *176
 
 action for a sex offense, the admission of evidence of the defendant’s commission of another sex offense, subject only to the restrictions of Evidence Code section 352. In the unpublished portion of this opinion, we reject defendant’s contentions as to his sentence and the reasonable doubt instruction.
 

 Factual and Procedural Background
 

 Angelica L., was 18 years old and lived with her child and her sister and her sister’s two children in an apartment in Sacramento. She met defendant at her apartment complex. He asked her out, to go to the fair, and she said yes. She had not been out in a long time and wanted to get away from the children.
 

 They left at 9:45 or 10 at night and made several stops. First, they went to Tiffany’s, a friend of Angelica’s. They went to several apartments looking for drugs and stopped at a liquor store where defendant bought some liquor. Around midnight, Angelica called Tiffany and asked when the fair closed. At one point Angelica called her friend Monica and asked her to meet them; Monica never showed up, but Angelica ran into other friends at the Safeway market in West Sacramento.
 

 Defendant and Angelica were successful in finding some marijuana, which they smoked, and they stopped for food at a Taco Bell. Finally, defendant drove to Sand Cove Park and got out to use the restroom. Angelica wanted to go home, but defendant refused. When defendant tried to take off Angelica’s seat belt, she got out of the car. Defendant apologized. As Angelica walked towards the car, defendant grabbed her, threw her on the back of the car, and began feeling her. Angelica screamed and said no. Defendant asked if she was ready to die. Defendant pulled down her shorts and raped her while standing behind her. He then took her home and invited her and her daughter to brunch the next morning.
 

 Once home Angelica called Tiffany and told her she had been raped. Tiffany told Angelica to tell her sister. Angelica’s sister then called the police.
 

 DNA (deoxyribonucleic acid) testing on semen samples from a vaginal swab and Angelica’s panties revealed a very high probability that defendant was the semen donor.
 

 At trial the People wanted to introduce evidence that defendant had committed another rape, as permitted under new Evidence Code section 1108. The People also offered the evidence as showing a common scheme under Evidence Code section 1101, subdivision (b). The defense objected.
 
 *177
 
 The trial court noted it was a “close call” whether the evidence was admissible as a common plan, but admitted it under both code sections.
 

 April D. testified she and her boyfriend, Chris, double-dated with defendant and his date in 1990. April had a fight with Chris that evening. Defendant came by in the early morning and told April he had a message from Chris that he was not coming home, but was moving in with another woman. Defendant was going to call Chris and asked if April wanted to come. She accompanied him to a phone booth two blocks away where defendant made a call. Defendant told April Chris was coming to meet him at McKinley Park; April went to the park as she wanted to speak to Chris.
 

 Chris did not show up at the park. Defendant told April he knew a way to get back at Chris and April said no. Defendant told her she could make it easy or hard. April got angry and said no. When defendant tried to touch her breast she pushed him away. Defendant pulled her hair and pulled her on top of a picnic table. When she refused to pull her pants down, he bit her neck and pulled her pants down. Defendant pulled up her sweatshirt, ripped her bra, and bit her breast. He penetrated her vagina with his penis for several minutes, stopping only when a transient approached. April spit at defendant and went home, where she later called the police.
 

 The parties stipulated defendant entered a guilty plea to the rape of April.
 

 Defendant originally told the police he did not have sex with Angelica. At trial, his defense was consent. Witnesses who saw defendant and Angelica that night testified she looked happy and not scared. One witness testified Angelica told her “I’m going to get mine tonight,” which she interpreted as meaning Angelica intended to have sex with defendant.
 

 After the jury found both prior serious felony allegations true, defendant moved to strike one prior. The court responded that defendant did not deserve leniency so even if it had the power it would not strike the prior. Pursuant to
 
 People
 
 v.
 
 Cartwright
 
 (1995) 39 Cal.App.4th 1123 [46 Cal.Rptr.2d 351], the court imposed two 5-year enhancements, and sentenced defendant to twenty-five years to life on the rape charge.
 

 Discussion
 

 I
 

 Evidence Code section 1101, subdivision (a) provides: “Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence
 
 *178
 
 of a person’s character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.” Subdivision (b) allows the admission of a crime, civil wrong, or other act to prove a fact, such as motive, intent, common plan, or identity, other than disposition. Evidence Code section 1108, enacted in 1995 (Stats. 1995, ch. 439, § 2), provides in subdivision (a): “In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant’s commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.”
 
 [1]
 

 Defendant contends this statute, which permits the admission of character evidence to prove disposition, violates due process.
 

 In reviewing a statute against constitutional challenge, “. . . we are mindful that it is our duty to uphold a statute unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity. [Citations.]”
 
 (Mills
 
 v.
 
 Superior Court
 
 (1986) 42 Cal.3d 951, 957 [232 Cal.Rptr. 141, 728 P.2d 211].)
 

 Preventing and dealing with crime is more the business of the states than of the federal government. Accordingly, the state has power to regulate the procedures under which its laws are carried out, and a rule of evidence in this regard “is not subject to proscription under the Due Process Clause
 
 *179
 
 unless ‘it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.’ [Citations.]”
 
 (Patterson
 
 v.
 
 New York
 
 (1977) 432 U.S. 197, 201-202 [97 S.Ct. 2319, 2322-2323, 53 L.Ed.2d 281, 286-287].)
 

 Evidence of a prior sexual offense is indisputably relevant in a prosecution for another sexual offense. “In the determination of probabilities of guilt, evidence of character is relevant. [Citations.]”
 
 (People
 
 v.
 
 Jones
 
 (1954) 42 Cal.2d 219, 223 [266 P.2d 38].) Indeed, the rationale for excluding such evidence is not that it lacks probative value, but that it is too relevant. “It may almost be said that it is because of the indubitable relevancy of specific bad acts showing the character of the accused that such evidence is excluded. It is objectionable not because it has no appreciable probative value but because it has too much.” (1A Wigmore on Evidence (Tillers rev. 1983) § 58.2, p. 1212.)
 

 One raising a due process claim to exclude relevant evidence must sustain a heavy burden.
 
 (Montana
 
 v.
 
 Egelhoff
 
 (1996) _ U.S. _, _ [116 S.Ct. 2013, 2017, 135 L.Ed.2d 361, 368];
 
 Watkins
 
 v.
 
 Meloy
 
 (7th Cir. 1996) 95 F.3d 4, 7 [“If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded.”].) The due process clause has limited operation beyond the specific guarantees of the Bill of Rights, and the category of infractions that violates “fundamental fairness” is defined very narrowly.
 
 (Dowling
 
 v.
 
 United States
 
 (1990) 493 U.S. 342, 352 [110 S.Ct. 668, 674, 107 L.Ed.2d 708, 720] [holding admission of evidence relating to alleged crime of which defendant had been acquitted did not violate due process].) The due process clause does not permit courts to engage in fine-tuning of state evidentiary rules.
 
 (Marshall
 
 v.
 
 Lonberger
 
 (1983) 459 U.S. 422, 438, fn. 6 [103 S.Ct. 843, 852-853, 74 L.Ed.2d 646, 661];
 
 Spencer
 
 v.
 
 Texas
 
 (1967) 385 U.S. 554, 564 [87 S.Ct. 648, 653-654, 17 L.Ed.2d 606, 614].)
 

 The United States Supreme Court has not decided whether a state law would violate the due process clause if it permitted the use of prior crimes evidence to show the defendant’s propensity to commit the charged crime.
 
 (Estelle
 
 v.
 
 McGuire
 
 (1991) 502 U.S. 62, 75, fn. 5 [112 S.Ct. 475, 483-484, 116 L.Ed.2d 385, 401].) Generally, however, federal courts have rejected the blanket assertion that the admission of uncharged misconduct evidence violates the due process clause. In
 
 Spencer
 
 v.
 
 Texas, supra,
 
 385 U.S. 554 [87 S.Ct.648, 17 L.Ed.2d 606] the high court reviewed a procedure under a Texas recidivist statute that permitted the jury to learn of defendant’s prior offenses, with the admonishment not to consider such offenses in determining guilt of the charged offense. Defendants contended this use of prior
 
 *180
 
 convictions “was so egregiously unfair upon the issue of guilt or innocence as to offend” the due process clause.
 
 (Id.
 
 at p. 559 [87 S.Ct. at p. 651, 17 L.Ed.2d at p. 611].) The court disagreed, finding the practice acceptable where a valid state purpose is served.
 
 (Id.
 
 at p. 564 [87 S.Ct. at pp. 653-654, 17 L.Ed.2d at p. 614].) The court recognized that the law of evidence had been chiefly developed by the states and expressed the concern that finding the admission of potentially prejudicial evidence unconstitutional “would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence.”
 
 (Id.
 
 at p. 562 [87 S.Ct. at pp. 652-653, 17 L.Ed.2d at p. 613].) (See also
 
 Ciucci
 
 v.
 
 Illinois
 
 (1958) 356 U.S. 571 [78 S.Ct. 839, 2 L.Ed.2d 983] [no due process violation to admit evidence of defendant’s four murders in case charging only one murder];
 
 Watkins
 
 v.
 
 Meloy, supra,
 
 95 F.3d 4 [evidence of prior rape in attempted rape case did not violate due process];
 
 Jammal
 
 v.
 
 Van de Kamp
 
 (9th Cir. 1991) 926 F.2d 918 [admission of evidence that defendant apprehended with $135,000 in his trunk did not render trial fundamentally unfair].)
 

 To succeed on his due process claim defendant must show that his right not to permit the jury to use character evidence to show disposition to commit the charged offense is a fundamental principle of justice. Our guide in making this determination is historical practice.
 
 (Montana
 
 v.
 
 Egelhoff, supra,
 
 _ U.S. _, _ [116 S.Ct. 2013, 2017, 135 L.Ed.2d 361, 368].) Defendant asserts this right is grounded in Anglo-American jurisprudence and is based on fundamental principles of fairness. In support of his assertion defendant relies upon the dissenting and concurring opinion of Chief Justice Warren in
 
 Spencer.
 
 “While this Court has never held that the use of prior convictions to show nothing more than a disposition to commit crime would violate the Due Process Clause of the Fourteenth Amendment, our decisions exercising supervisory power over criminal trials in federal courts, as well as decisions by courts of appeals and of state courts, suggest that evidence of prior crimes introduced for no purpose other than to show criminal disposition would violate the Due Process Clause.”
 
 (Spencer
 
 v.
 
 Texas, supra,
 
 385 U.S. 554, 572-575 [87 S.Ct. 648, 658-660, 17 L.Ed.2d 606, 619-620, fns. omitted (cone, and dis. opn. of Warren, C. J.).)
 

 Defendant also relies upon
 
 McKinney
 
 v.
 
 Rees
 
 (9th Cir. 1993) 993 F.2d 1378. In
 
 McKinney
 
 the victim’s throat was slit by a knife and the murder weapon was never found. The prosecution introduced evidence that defendant, the victim’s son, had a knife collection, was fascinated with knives, and had scratched “Death is His” on his closet door. Defendant sought habeas corpus relief on the ground that the admission of this “other acts” evidence deprived him of a fair trial. The Ninth Circuit found that most of this
 
 *181
 
 evidence was probative only of defendant’s character. It found the prohibition against use of such character evidence “is based on such a ‘fundamental conception of justice’ and the ‘community’s sense of fair play and decency’ as concerned the Supreme Court in Dowling.”
 
 (Id.
 
 at p. 1384.) The admission of this evidence deprived defendant of a fair trial. “It is part of our community’s sense of fair play that people are convicted because of what they have done, not who they are.”
 
 (Id.
 
 at p. 1386; see also
 
 United States
 
 v.
 
 Myers
 
 (5th Cir. 1977) 550 F.2d 1036, 1044 [42 A.L.R.Fed. 855] [“A concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is.”].)
 

 While the
 
 McKinney
 
 court indicates the ban on character evidence is well established, the Supreme Court has noted, “. . . the common law was far more ambivalent. [Citation.] Alongside the general principle that prior convictions are inadmissible, despite their relevance to guilt, [citation], the common law developed broad, vaguely defined exceptions—such as proof of intent, identity, malice, motive, and plan—whose application is left largely to the discretion of the trial judge, [citation]. In short, the common law, like our decision in
 
 Spencer,
 
 implicitly recognized that any unfairness resulting from admitting prior convictions was more often than not balanced by its probative value and permitted the prosecution to introduce such evidence without demanding any particularly strong justification.”
 
 (Marshall
 
 v.
 
 Lonberger, supra,
 
 459 U.S. 422, 438, fn. 6 [103 S.Ct. 843, 852-853, 74 L.Ed.2d 646, 661].)
 

 This ambivalence about prohibiting character evidence is greatest in sex offense cases. Courts have liberally interpreted evidence rules to permit the admission of uncharged sexual misconduct under the rubric of motive, identity and common plan, or more directly admitted it under an exception known as the “lustful disposition” rule. (1A Wigmore on Evidence,
 
 supra,
 
 § 62.2, pp. 1334-1335 [“Do such decisions show that the general rule against the use of propensity evidence against an accused is not honored in sex offense prosecutions? We think so.”]; 1 McCormick on Evidence (Strong 1992) § 190, pp. 803-804; Reed,
 
 Reading Gaol Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases
 
 (1993) 21 Am. J. Crim. L. 127, 128-217.) More recently, the ban on uncharged sexual misconduct as character evidence in sex offense cases has been eliminated in federal courts under rule 413 of the Federal Rules of Evidence (28 U.S.C.).
 
 [2]
 

 The confusion and ambivalence in this area has evolved in California to a change in policy. Our elected Legislature has determined that the policy
 
 *182
 
 considerations favoring the exclusion of evidence of uncharged sexual offenses are outweighed in criminal sexual offense cases by the policy considerations favoring the admission of such evidence.
 
 [3]
 
 The Legislature has determined the need for this evidence is “critical” given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial. (Lungren,
 
 Stopping Rapists and Child Molesters by Giving Juries All the Facts—Reforms in Federal and California Law
 
 (1995) 17 Prosecutor’s Brief 13, 13-14, 23.)
 

 The due process clause requires proof beyond a reasonable doubt of every fact necessary to constitute the charged crime.
 
 (In re Winship
 
 (1970) 397 U.S. 358, 364 [90 S.Ct. 1068, 1078, 25 L.Ed.2d 368, 375].) Defendant contends the admission of evidence of uncharged sex offenses to show the defendant’s propensity to commit the charged offense dilutes this standard of proof. The jury was instructed that the question it was to decide was whether defendant committed the crime charged and that he could be found guilty only if the jury was convinced beyond a reasonable doubt that he committed the crime.
 
 [4]
 
 While the admission of evidence of the uncharged sex offense may have added to the evidence the jury could consider as to defendant’s
 
 *183
 
 guilt, it did not lessen the prosecution’s burden to prove his guilt beyond a reasonable doubt. “The courts specifically addressing the question of Win-ship’s application to uncharged misconduct uniformly hold that the admission of uncharged misconduct does not undermine Winship.” (Imwinkelreid, Uncharged Misconduct Evidence (1986) § 10.11, ch. 10, p. 21, fn. omitted.)
 

 Our Supreme Court has recognized the possibility that propensity evidence may reduce the burden of proof. In a capital murder case it noted that if the jury used evidence of an uncharged killing to show defendant’s propensity to kill, “. . .the prosecution’s burden of proof as to the central issue in the case, the identity of [the victim’s] slayer, arguably was lightened, thus raising the possibility that defendant’s constitutional right to due process of law was impaired.”
 
 (People
 
 v.
 
 Garceau
 
 (1993) 6 Cal.4th 140, 186 [24 Cal.Rptr.2d 664, 862 P.2d 664].)
 

 Evidence Code section 1108 has a safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial. Such evidence is still subject to exclusion under Evidence Code section 352. (Evid. Code, § 1108, subd. (a).) By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (Evid. Code, § 352.) This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence.
 
 (Benson
 
 v.
 
 Honda Motor Co.
 
 (1994) 26 Cal.App.4th 1337, 1348 [32 Cal.Rptr.2d 322].) With this check upon the admission of evidence of uncharged sex offenses in prosecutions for sex crimes, we find that Evidence Code section 1108 does not violate the due process clause. While defendant does challenge the trial court’s balancing determination under Evidence Code section 352, his argument is limited to admission of the evidence to show a common plan under Evidence Code section 1101, subdivision (b). He does not contend the trial court abused its discretion in admitting the evidence under Evidence Code section 1108.
 

 Finally, defendant notes the prohibition against convicting a defendant due to his status rather than his act.
 
 (Robinson
 
 v.
 
 California
 
 (1962) 370 U.S.
 
 *184
 
 660 [82 S.Ct. 1417, 8 L.Ed.2d 758] [cruel and unusual to punish a defendant for his drug addiction rather than his criminal act].) The jury was instructed it could not convict defendant simply because it found he had a character trait that tends to predispose him to commit the crime charged. We presume the jury followed this clear instruction.
 
 (People
 
 v.
 
 Osband
 
 (1996) 13 Cal.4th 622, 714 [55 Cal.Rptr.2d 26, 919 P.2d 640].)
 

 Defendant’s attack upon Evidence Code section 1108 asks this court to take issue with legislative policy. We decline to do so. It is not our role to determine the “wisdom” of legislation or to determine whether the Legislature selected the “correct” solution to the problem.
 
 (Buhl
 
 v.
 
 Hannigan
 
 (1993) 16 Cal.App.4th 1612, 1621 [20 Cal.Rptr.2d 740].) Since Evidence Code section 1108 does not implicate any of the guarantees of the Bill of Rights and it does not offend a fundamental principle of justice rooted in the traditions and conscience of our people, we find that Evidence Code section 1108 on its face does not violate the due process clause.
 
 (Dowling
 
 v.
 
 United States, supra,
 
 493 U.S. 342, 352-353 [110 S.Ct. 668, 674-675, 107 L.Ed.2d 708, 720].)
 

 II
 

 Defendant contends Evidence Code section 1108 violates equal protection because it treats those accused of sex offenses differently from those accused of other crimes. He asserts the statute is subject to a strict scrutiny analysis because it infringes upon his constitutionally protected rights to a fair trial, due process, and the requirement that the case be proved beyond a reasonable doubt.
 

 As discussed above, we reject defendant’s contention that the statute infringes upon his constitutional rights. An equal protection challenge to a statute that creates two classifications of accused or convicted defendants, without implicating a constitutional right, is subject to a rational-basis analysis.
 
 (Estelle
 
 v.
 
 Dorrough
 
 (1975) 420 U.S. 534, 537-538 [95 S.Ct. 1173, 1175-1176, 43 L.Ed.2d 377, 381].)
 

 Evidence Code section 1108 withstands this relaxed scrutiny. The Legislature determined that the nature of sex offenses, both their seriousness and their secretive commission which results in trials that are primarily credibility contests, justified the admission of relevant evidence of a defendant’s commission of other sex offenses. This reasoning provides a rational basis for the law. Defendant’s arguments as to the recidivism rate of sex offenders are unavailing. In order to adopt a constitutionally sound statute, the Legislature need not extend it to all cases to which it might apply. The
 
 *185
 
 Legislature is free to address a problem one step at a time or even to apply the remedy to one area and neglect others.
 
 (People
 
 v.
 
 Silva
 
 (1994) 27 Cal.App.4th 1160, 1170-1171 [33 Cal.Rptr.2d 181].)
 

 Ill
 

 Defendant committed his offense in August 1995. Evidence Code section 1108 was enacted in 1995, but did not become effective until January 1, 1996. (Gov. Code, §9600.) Provisions of the Evidence Code apply to trials commenced on or after the effective date. (Evid. Code, § 12.) Since defendant’s trial commenced after January 1, 1996, the trial court applied Evidence Code section 1108.
 

 Defendant contends application of Evidence Code section 1108 to his case violates the constitutional prohibition against ex post facto laws. (U.S. Const., art. I, § 9, cl. 3; Cal. Const., art. I, § 9.)
 

 The California and federal ex post facto clauses are interpreted the same.
 
 (Tapia
 
 v.
 
 Superior Court
 
 (1991) 53 Cal.3d 282, 295 [279 Cal.Rptr. 592, 807 P.2d 434].) Under the ex post facto clause “Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts.”
 
 (Collins
 
 v.
 
 Youngblood
 
 (1990) 497 U.S. 37, 43 [110 S.Ct. 2715, 2719, 111 L.Ed.2d 30, 39].) The meaning of the clause has been summarized as follows: “ ‘It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as
 
 ex post facto.'
 
 ”
 
 (Id.
 
 at p. 42 [110 S.Ct. at p. 2719, 111 L.Ed.2d at p. 39], quoting
 
 Beazell
 
 v.
 
 Ohio
 
 (1925) 269 U.S. 167, 169-170 [46 S.Ct. 68, 68-69, 70 L.Ed. 216, 217].)
 

 This formulation omitted an element from an earlier formulation, which included: “ ‘Every law that alters the
 
 legal
 
 rules of
 
 evidence,
 
 and receives less, or different, testimony, than the law required at the time of the commission of the offense,
 
 in order to convict the offender.'
 
 ”
 
 (Collins
 
 v.
 
 Youngblood, supra,
 
 497 U.S. at p. 42 [110 S.Ct. at p. 2719, 111 L.Ed.2d at pp. 38-39], quoting
 
 Calder
 
 v.
 
 Bull
 
 (1798) 3 U.S. (3 Dall.) 386, 390 [1 L.Ed. 648, 650] (opn. of Chase, J.), italics in original.) However, “[a]s cases subsequent to [Calder] make clear, this language was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes. [Citations.]”
 
 (Collins, supra,
 
 at p. 43, fn. 3 [110 S.Ct.
 
 *186
 
 at p. 2719, 111 L.Ed.2d at p. 39].) “[A] new rule of evidence which admits evidence not previously admissible or which extends competency to a witness may validly operate in the trial of a prior offense. [Citations.]”
 
 (DeWoody
 
 v.
 
 Superior Court
 
 (1970) 8 Cal.App.3d 52, 56 [87 Cal.Rptr. 210].)
 

 Since Evidence Code section 1108 does not alter the definition of a crime, increase punishment, or eliminate a defense, it does not violate the ex post facto clause.
 
 (Collins
 
 v.
 
 Youngblood, supra,
 
 497 U.S. at pp. 42-43 [110 S.Ct. at pp. 2719-2720, 111 L.Ed.2d at p. 39].)
 

 IV-VI
 
 *
 

 Disposition
 

 The judgment is affirmed.
 

 Puglia, P. J., and Callahan, J., concurred.
 

 A petition for a rehearing was denied June 20, 1997, and appellant’s petition for review by the Supreme Court was denied September 3, 1997. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.
 

 [1]
 

 The entire text of Evidence Code section 1108 reads: “(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant’s commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352. [*JI] (b) In an action in which evidence is to be offered under this section, the people shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least 30 days before the scheduled date of trial or at such later time as the court may allow for good cause. [<1 (c) This section shall not be construed to limit the admission or consideration of evidence under any other section of this code. [DD (d) As used in this section, the following definitions shall apply: FJD (1) ‘Sexual offense’ means a crime under the law of a state or of the United States that involved any of the following: [*]]] (A) Any conduct proscribed by Section 243.4, 261, 261.5, 262, 264.1, 266c, 286, 288, 288a, 288.2, 288.5, or 289, or subdivision (b), (c), or (d) of Section 311.2 or Section 311.3, 311.4, 311.10, 311.11, 314, or 647.6, of the Penal Code. [1 (B) Contact, without consent, between any part of the defendant’s body or an object and the genitals or anus of another person, [U (C) Contact, without consent, between the genitals or anus of the defendant and any part of another person’s body. [IQ (D) Deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person. [1 (E) An attempt or conspiracy to engage in conduct described in this paragraph. [*i (2) ‘Consent’ shall have the same meaning as provided in Section 261.6 of the Penal Code, except that it does not include consent which is legally ineffective because of the age, mental disorder, or developmental or physical disability of the victim.”
 

 [2]
 

 Rule 413(a) of the Federal Rules of Evidence provides: “In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant’s commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.”
 

 [3]
 

 This evolution has continued. In 1996, the Legislature enacted Evidence Code section 1109, which permits admission of evidence of defendant’s act of domestic violence in a criminal action in which defendant is accused of an offense involving domestic violence. (Stats. 1996, ch. 261, § 2.)
 

 [4]
 

 The trial court instructed the jury as follows: “Evidence has been introduced for the purpose of showing that defendant committed a crime other than that for which he’s on trial. [<]D Such evidence, if believed, was received and may be considered by the—you for either of two limited purposes described in this instruction. RD The first purpose for which it was received and for which it may be considered is for the limited purpose of determining if it tends to. show a characteristic method, plan or scheme used in the commission of the offenses charged in this case. [H For this limited purpose you must weigh the evidence in the same manner you do all the other evidence in this case. [H Evidence that the defendant committed a crime other than the one for which he is on trial, if believed, was also admitted and may be considered as evidence that he has a trait of character that predisposes him to commission of certain crimes. Therefore, if—you may use that evidence that the defendant committed another offense for the limited purpose of deciding whether he has a particular character trait that tends to predispose him to the commission of the charged offense. [DO In weighing evidence of a prior offense you must make several decisions. First you must decide whether a prior offense has been proved. Second you must decide whether proof of the prior offense proves a character trait of the defendant. [DD If you determine that the prior offense has not been proved, you must disregard that evidence. fiD If you decide that a character trait of the defendant has been proved, you must decide whether the proved character trait is relevant to whether he committed the charged offense. [ID If you find the proved character trait is not relevant to whether the defendant committed the charged offense, you must disregard the evidence of character. [<f] If you find that a character trait of the defendant has been proved and the proved character trait is relevant to whether he committed the charged offense, then you may consider this evidence together with other evidence to decide whether he committed the charged offense. fiD You may not convict him merely because you believe he committed a—another offense or because you believe he has a character trait that tends to predispose him
 
 *183
 
 to committing the charged offense. [<]0 The question before you is whether the defendant is guilty of the crime charged in this case, not whether he is guilty of any other offense. [SD You may return a verdict of guilty only if you are convinced beyond a reasonable doubt that he committed the offense charged against him in this case. [U For the limited purpose for which you may consider such evidence you must weigh it as I have described in this instruction. [H You are not permitted to consider such evidence evidence [sic] for any other purposes."
 

 *
 

 See footnote,
 
 ante,
 
 page 172.