Filed 4/21/16  P. v. Romero CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NICHOLAS ROMERO,<br><br>    Defendant and Appellant. | B263144<br><br>(Los Angeles County<br>Super. Ct. No. BA426025) |

APPEAL from a judgment of the Superior Court of Los Angeles County. George G. Lomeli, Judge.  Affirmed with modifications.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

Nicholas Romero (defendant) appeals his convictions for three counts of forcible rape, contending that the trial court erred in admitting two other prior sexual assaults pursuant to Evidence Code section 1108[1] because that section is unconstitutional. Defendant's contention has no merit, so we affirm. However, we modify defendant's sentence to correct a sentencing error.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Charged Conduct

#### A.    *Kristina*

In September 2013, defendant's then-girlfriend, Kristina N., had a miscarriage. Three days later, while she was still experiencing vaginal bleeding and pain, defendant pressured her to have sex. When she refused, defendant threatened her, warning, "You fucking bitch, you better not say anything. We're going to have sex," and "if you try to scream or do anything, I'm going to fucking kill you." Throughout that night, defendant continued to threaten her, pinned her against the bed, and strangled her neck with his bare hands. Eventually defendant forcibly inserted his penis into Kristina's vagina as she cried and begged him to stop.

In mid-October 2013, Kristina came home to find defendant, drunk, sitting in her apartment. She told him to leave, but left him to let himself out as she took a shower. Defendant followed her into the shower where he held her by her neck and lifted her off the ground before he dropped her and she lost consciousness. When she awoke, defendant threatened to kill her and forced her to have sex three times before he left the next morning.

#### B.    *Adriana*

Also in mid-October 2013, defendant contacted Adriana S., a long-time friend and occasional sexual partner, and asked if he could come over her place. She told him no, but he showed up anyway. Because he was drunk, Adriana allowed him to sleep on her couch and went into her own bedroom to sleep. Defendant later entered her bedroom,

---

[1]    Unless otherwise indicated, all further statutory references are to the Evidence Code.

climbed into her bed, and began removing her clothes. When Adriana told him to stop and pushed and kicked him, defendant "overpowered" her by pinning her to the bed and choking her neck with his hand. Over the next several hours, defendant hit Adriana over the head with a glass bottle, attempted to make her perform oral sex, and forced his penis into her vagina and anus as she cried, begged him to stop, and struggled to breathe. At times, she felt like she was losing consciousness and that she was going to die. Adriana reported the assault to the police the next morning.

### C. *Evading an officer*

On October 19, 2013, while hiding from police following his assault on Adriana, defendant went to Kristina's apartment and told her "You think what I did to you was bad? You should have seen what I did to Adriana." Later that day, after refusing to comply with a traffic stop, defendant led police on a high-speed chase which ended when he jumped from his moving truck, fled on foot, and was apprehended hiding in the crawlspace beneath a house.

## II. Procedural History

The People charged defendant with (1) the forcible rape of Kristina in September 2013 (Pen. Code, § 261, subd. (a)(2)); (2) her forcible rape in October 2013 (*ibid.*); (3) the forcible rape of Adriana in October 2013 (*ibid.*); (4) the forcible sodomy of Adriana in October 2013 (Pen. Code, § 286, subd. (c)(2)); (5) the sexual penetration of Adriana by a foreign object in October 2013 (Pen. Code, § 289, subd. (a)(1)(A)); and (6) evading a police officer (Veh. Code, § 2800.2, subd. (a)). The People further alleged that the crimes triggered California's "One Strike" law for sex offenders because it involved multiple victims (Pen. Code, § 667.61, subd. (a)).

The matter proceeded to trial, and a jury convicted defendant of all three counts of forcible rape and evading a police officer; the jury acquitted him of forcible sodomy and sexual penetration. The jury also found the multiple victim allegation to be true.

The trial court sentenced defendant to prison for 32 years to life—15 years to life for the September 2013 forcible rape of Kristina, followed by a consecutive 15 years to life for the October 2013 forcible rape of Adriana, followed by a consecutive two years

3

for evading the police. The court also imposed a sentence of 15 years to life for the October 2013 forcible rape of Kristina, but ordered it to run concurrently with the other sentences.

Defendant timely appeals.

## DISCUSSION

### I. Mistake of Fact Instruction

In his opening brief on appeal, defendant argued that the trial court erred in refusing to instruct the jury, pursuant to *People v. Mayberry* (1975) 15 Cal.3d 143, that his reasonable but mistaken belief in Kristina's or Adriana's consent to sex was a defense to the charged crimes. When the People pointed out that the trial court *had* given that instruction, defendant withdrew that argument from his appeal. We will accordingly not address the argument.

### II. Unconstitutionality of Evidence Code section 1108

Prior to trial, the People sought to admit evidence that defendant had engaged in four other, uncharged acts of nonconsensual sex (1) to prove his intent with respect to the charged offenses, pursuant to section 1101, subdivision (b), and (2) to prove his disposition to commit sex acts, pursuant to section 1108. After considering defendant's written opposition and entertaining argument, the trial court evaluated the admissibility of these uncharged acts pursuant to the considerations set forth in section 352 (namely, the probative value of this evidence and whether it was outweighed, most chiefly, by the substantial danger of creating undue prejudice). The trial court excluded two uncharged acts, and admitted two others.

On appeal, defendant does not challenge the *admission* of the two uncharged acts. Instead, he argues that section 1108, which the trial court relied upon in admitting the evidence to prove his disposition, violates the constitutional guarantees of due process and equal protection. Numerous courts, including our Supreme Court, have rejected these challenges. (*People v. Falsetta* (1999) 21 Cal.4th 903, 912-922 [rejecting due process challenge to section 1108]; *People v. Loy* (2011) 52 Cal.4th 46, 60-61 [same]; *People v. Fitch* (1997) 55 Cal.App.4th 172, 184-185 [rejecting both due process and

4

equal protection challenges to section 1108]; *People v. Robertson* (2012) 208 Cal.App.4th 965, 994 [same].)  Defendant invites us to depart from this precedent in light of the Ninth Circuit's decision in *Garceau v. Woodford* (9th Cir. 2001) 275 F.3d 769, reversed on other grounds in *Woodford v. Garceau* (2003) 538 U.S. 202.  We decline this invitation.  To begin, we are not able to ignore the binding authority of our Supreme Court (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455) to follow the merely persuasive authority of the lower federal courts (*People v. Linton* (2013) 56 Cal.4th 1146, 1182, fn. 8).  Even if we could, *Garceau* held that a court violated a defendant's due process rights by admitting uncharged evidence to show propensity in violation of section 1101, subdivision (a); *Garceau* did not at all address section 1108, which is an exception to section 1101, subdivision (a).  (*Garceau*, at pp. 774-776.)  Indeed, when the Ninth Circuit addressed a Federal Rule of Evidence analogous to section 1108—namely, the rule permitting introduction of uncharged acts of child molestation to show a defendant's propensity—the Circuit *upheld* that rule against due process and equal protection challenges.  (*United States v. LeMay* (9th Cir. 2011) 260 F.3d 1018, 1024-1031.)

## III.    Sentencing error

Finally, although neither party raised the issue in their briefs, we independently note that there is an error with defendant's sentence.  Where, as the trial court did with the evading an officer count, a court imposes a consecutive sentence, it is supposed to impose "one-third of the middle term" sentence prescribed for that crime.  (§ 1170.1, subd. (a).)  Here, the court imposed the *full* middle term.  This was error.  Accordingly, we modify defendant's sentence to reflect an 8 month sentence on the evading an officer count, for a total sentence of 30 years and 8 months.

5

**DISPOSITION**

The judgment is modified to provide for a sentence of eight months on the evading police conviction. The superior court is ordered to prepare an amended abstract of judgment reflecting the modified sentence and to forward a certified copy of the amended abstract to the California Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
ASHMANN-GERST

6