Filed 9/22/21  P. v. Goodman CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KENNETH JAY GOODMAN JR.,<br><br>    Defendant and Appellant. | A157559<br><br>(Contra Costa County<br> Super Ct. No. 5190047-1) |

Defendant Kenneth Jay Goodman Jr. appeals from the trial court's sentencing order, imposing a four-year prison term after a jury convicted him of two counts of first-degree burglary with a person present.  (See Pen. Code, §§ 459, 667.5, subd. (c).)  Goodman's sole contention on appeal is that trial court abused its discretion by admitting evidence that he had committed an uncharged theft pursuant to Evidence Code[1] section 1101, subdivision (b). We disagree and affirm.

---

[1] All statutory references are to the Evidence Code unless otherwise specified.

1

# I.  FACTUAL AND PROCEDURAL BACKGROUND

In January 2019, both Goodman and his co-defendant Ivan Rascon were charged by information with felony first-degree burglary with a person present based on a December 2018 incident (Pen. Code, § 459, count one). Count one was enhanced by allegations that the offense was a violent felony (*id.,* § 667.5, subd. (c)), that the defendants were ineligible for probation (*id.,* § 462, subd. (a)) and that, if convicted, they must serve their sentences in state prison (*id.,* § 1170).  Goodman was additionally charged under count two with felony first-degree burglary with a person present based on an April 2017 incident (*id.,* § 459), which was enhanced by the same allegations as count one.

Prior to the jury trial in this matter, Goodman's and Rascon's motions to sever counts and/or codefendants were denied by the trial court.  Over Goodman's objection, the court granted the prosecutor's request under section 1101, subdivision (b), to admit evidence of an uncharged offense—a November 2017 shoplifting incident—to aid in establishing Goodman's intent with respect to the charged April 2017 burglary.  The following evidence was adduced at trial.

## A.    April 2017 Residential Burglary

At approximately 9:30 a.m. on April 27, 2017, C.D. was home in her second-floor apartment in Antioch with her teenaged daughter and the daughter's friend.  C.D. was in her kitchen, next to the apartment's front door, when she heard someone behind her.  She turned and saw a stranger, later identified as Goodman, standing within 14 feet of her.  He was holding a hatchet and exiting the apartment.  Very scared, C.D. ran screaming down the hallway to check on the two girls.  The girls ran out of the front door of the apartment, and C.D. grabbed a broom and followed them.

Goodman fled from the apartment complex but was chased by C.D. for several blocks. Goodman kept turning around and yelling he had done nothing wrong. He dropped the hatchet during the chase. C.D. later discovered that the screen from her bedroom window had been removed and the frame bent. The next day, C.D. identified a picture of Marcus Dukes, an African-American man, as an individual who was with Goodman the previous day.

Antioch Police Officer Loren Bledsoe was dispatched to the apartment complex at approximately 9:45 a.m. in response to a report of a white woman chasing an African-American man and a white male with a broom. Approaching in a marked police car, Officer Bledsoe observed a white man (identified as Goodman) being pursued by an African-American woman, who was in her pajamas and wielding a broomstick. Officer Bledsoe commanded Goodman to stop and took Goodman into custody without incident. Officer Bledsoe toured C.D.'s apartment and saw nothing obviously disturbed. The bedroom window was wide open, and it appeared that the window screen had been pried open. Officer Bledsoe subsequently reviewed police history concerning the apartment adjacent to C.D.'s apartment and determined that Dukes was a person of interest with respect to a separate burglary there.

Testifying for the defense, Tammy Tisdale, the apartment manager reported that, on the morning of April 27, 2017, two African-American men entered the management office to discuss an apartment. She identified one of the men as Dukes and security footage of the encounter was played for the jury. Tisdale testified that she was aware of an incident which occurred at the apartment adjacent to C.D.'s apartment in the same time frame. She identified an individual in the suspect lineup for that apartment that was not Goodman or Rascon.

3

**B.     December 2018 Residential Burglary with Rascon**

On December 19, 2018, A.S. was at her home in Antioch where she lived with her two young children, her mother, and a legally blind roommate. At approximately 11:00 a.m., A.S. was in the backyard with one of her children. Her mother, who was wearing a black leather jacket that day, had left the house a little while earlier. A.S. heard a rattling noise at the fence and, fearing it was the neighbor's large dog, took her child inside. As she walked to her bedroom, she caught a glimpse of a leather jacket out the front window. She assumed it was her mother returning. After a few minutes, wondering why her mother had not come inside, A.S. looked out the window again and saw a man trying to open the security gate to her front porch. The man began climbing the gate and placed his arms through a gap between the gate and the porch roof. There was a package on the porch behind the gate. A.S. told the roommate to call 911.

A.S. armed herself with a cast iron skillet and a knife and went onto the enclosed porch to confront the man. She asked what he was doing and told him the police were being called. The man was "shocked" and attempted to climb down from the gate, but a piece of his clothing got caught on the gate causing him to be hung up there for nearly 30 seconds. The man freed himself and walked away. Thereafter, while on the phone with the police, A.S. saw a second white man walk away from the side of the house and join the first man. A.S. later identified Rascon and Goodman in a field showup.

Antioch Police Officer Ashley Allen testified that she responded to a report of a burglary involving two suspects—one wearing a black jacket and a red beanie and one wearing a black leather jacket. Officer Allen detained two men meeting this description. At trial, she identified Goodman and Rascon

4

as the men she had detained. She thought Goodman was the one wearing the beanie.

Antioch Police Officer Ben Padilla was dispatched to the crime scene, looking for one subject wearing a leather jacket and one wearing a beanie. When Officer Padilla contacted A.S., she was shaken and talking very quickly. He told her that two men had been detained and asked her to go with him for an in-field showup. After viewing the men from the back seat of Officer Padilla's patrol car—a distance of approximately 42 feet—A.S. was "adamant" that the two men were the men she saw in her yard. She thought the man with the beanie was the one by the fence. According to Officer Padilla, Goodman was not wearing a beanie at the time of the showup.

## C.    2017 Uncharged Theft from Walmart

Walmart asset protection associate William Hunsucker testified with respect to Goodman's 2017 uncharged theft. Prior to his testimony, the trial court instructed the jury that the witness's information related only to Goodman and only to the question of whether or not Goodman had the intent to commit a theft when he committed a burglary. On November 11, 2017, Hunsucker observed Goodman tear open a package of t-shirts and conceal two of them in the waistline of his pants. Goodman then selected a jacket, put it on, and attempted to leave without paying. After Goodman had passed the store's cash registers and exited into the vestibule, Hunsucker contacted him and told him that he needed to return to the store for "processing." Goodman was initially uncooperative but complied after Hunsucker told him that he would call the police. The parties stipulated that Goodman was convicted of petty theft for this conduct.

5

**D. Goodman's Testimony, Verdict & Sentencing**

Goodman took the stand in his defense. At the time of trial, he had been homeless for approximately 18 months and was unemployed, although he had previously worked as a heating and air-conditioning technician. On April 27, 2017, he lived in an apartment across the street from C.D.'s apartment complex. That morning, Goodman walked to a hardware store and bought a hatchet so he could chop wood at his brother's house later that day.

On the way home, Dukes signaled Goodman over to the front of C.D.'s apartment building. Goodman had a passing acquaintance with Dukes and had seen him around the neighborhood. Dukes told Goodman he needed help getting into his girlfriend's locked apartment to retrieve his belongings because she was at work. He stated there would be a purple duffle bag and two pairs of shoes in the front room. Dukes asked Goodman to access her apartment by climbing up to the roof and going through a window. For "whatever reason," Goodman believed Dukes was physically unable to retrieve the belongings himself.

Goodman entered an apartment through the window and was surprised to find a person present. He ran out the front door, and C.D. chased him while hitting him with a broom. Dukes yelled that Goodman had entered the wrong apartment. Goodman claimed he had carried the hatchet with him so that no one would steal it. He told the police he had the hatchet because he worked fixing air conditioners.

Goodman admitted the shoplifting incident at Walmart, stating he knew it was wrong, but he was homeless and cold. He also testified that he had unknowingly purchased a stolen car in the past and had been incarcerated for doing so. With respect to the December 2018 incident,

6

Goodman stated that he and Rascon were living in a tent by the railroad tracks and were walking to a soup kitchen when he saw a cigarette butt near A.S.'s driveway. Rascon walked up to the gate to pick up the cigarette butt from the ground, because Goodman could not afford to buy cigarettes. Goodman denied that he or Rascon climbed A.S.'s fence or entered her yard. He did admit that he saw a package on her patio inside the gate. Goodman was wearing a blue and orange Chicago Bears beanie that day.

Yadira Hernandez, a defense investigator, testified that she went to A.S.'s house and took various measurements of the gap above the security gate, which she read into the record. She did not try to put her head or arms through the opening.

On April 4, 2019, the jury found both Rascon and Goodman guilty as charged.[2] At sentencing on June 7, 2019, the trial court denied probation and sentenced Goodman to four years in state prison, the middle term, on count one. The court imposed a concurrent four-year sentence with respect to count two. Goodman timely appealed.

## II. ADMISSION OF UNCHARGED CRIME EVIDENCE

### A. Additional Background

In March 2019, Goodman filed motions in limine, including a request that "any evidence of any alleged and/or uncharged prior criminal acts by, arrests of, or police contacts with Mr. Goodman" be excluded under sections 350, 352, and 1101, subdivision (a). The prosecutor, in contrast, sought admission of two prior offenses involving Goodman—a November 2017 shoplifting incident at a Walmart and his theft of groceries from a Safeway in July 2018. The prosecutor argued that the incidents were admissible

_____

[2] Rascon's appeal with respect to his conviction is currently pending before this court. (A157158)

7

pursuant to section 1101, subdivision (b) to help prove Goodman's intent to commit larceny during the charged 2017 burglary, were much less inflammatory than the charged crimes, and were sufficiently recent to be relevant.

The court heard argument on April 2, 2019. The prosecutor asserted that, since Goodman was putting intent at issue with respect to the April 2017 burglary, either or both of the uncharged offenses "would be highly probative of that issue" under section 1101, subdivision (b). Defense counsel countered that the prior acts were not sufficiently similar to have "any sort of probative value" and would thus constitute inadmissible propensity evidence. She also clarified that she was objecting under section 352 and on due process grounds as well as under section 1101. The court concluded that the July 2018 theft of food was "very attenuated" and declined to admit it. However, it found the 2017 Walmart theft—where Goodman had "pass[ed] all points of sale"—was more likely to support evidence of intent with respect to his entry into the home in this case and admitted it on that basis.

After the close of evidence, the trial court instructed the jury that it could consider Goodman's petty theft conviction as it related to Goodman's credibility and his intent. Although the prosecutor had initially sought admission of the petty theft to establish intent with respect to the charged April 2017 burglary, she later requested that CALCRIM No. 375 be given with respect to both burglary charges. The trial court agreed, stating: "I think it's relevant for intent, period." The jury was ultimately instructed as follows:

"The People presented evidence that the defendant Goodman committed another offense, petty theft, that was not charged in this case.

8

"You may consider this evidence only if the People have proved by a preponderance of the evidence that defendant Goodman in fact committed the uncharged offense of petty theft.  Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the people have not met this burden, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged offense of petty theft, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not:  [¶]  The defendant acted with the intent to commit a theft in this case or; the defendant's alleged actions were the result of a mistake.

"In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offense and the charged offenses.

"Do not consider this evidence for any other purpose except for the limited purpose of intent or mistake and determining the defendant's credibility.

"Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

"If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of burglary.  The People must still prove each charge beyond a reasonable doubt."

**B.    Uncharged Crime Evidence Under Section 1101, subdivision (b)**

Character evidence is generally inadmissible to prove a defendant's conduct on a specific occasion.  (§ 1101, subd. (a).)  However, evidence that a defendant "committed a crime, civil wrong, or other act" beyond the offenses charged is admissible when relevant to prove certain facts other than criminal disposition, including "motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident."  (*Id.*, subd. (b).)  " 'Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent.' "  (*People v. Foster* (2010) 50 Cal.4th 1301, 1328 (*Foster*).)  However, " '[t]he least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent."  (*Ibid.*)  The uncharged conduct need only be " 'sufficiently similar to support the inference that the defendant " 'probably harbor[ed] the same intent in each instance.' " ' "  (*Ibid.*)

Even where evidence of prior misconduct is admissible to prove intent under section 1101, subdivision (b), the trial court must separately consider "whether the probative value of the evidence 'is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." ' " (*Foster*, *supra*, 50 Cal.4th at pp. 1328-1329, quoting § 352.)  Prejudicial in this context is not synonymous with damaging.  (*People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138.)  Rather, prejudicial evidence for purposes of section 352 is " ' "evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues." ' "  (*Ibid.*)  Relevant considerations in an analysis under section 352

may include whether the prior misconduct was more inflammatory than the charged conduct, the possibility of jurors confusing the prior act with the charged acts, how much time had passed between the prior act and the charged crimes, and whether the defendant was convicted and punished for the prior offense.  (Compare *id.* at pp. 1136 & fn. 5, 1139.)

The weighing process under section 352 "is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence."  (*People v. Fitch* (1997) 55 Cal.App.4th 172, 183.)  We review a trial court's rulings on relevance and the admission or exclusion of evidence under sections 1101 and 352 for abuse of discretion.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.)  On review, we consider whether the trial court gave limiting instructions, which can "eliminate[] any danger 'of confusing the issues, or of misleading the jury.' "  (*People v. Lindberg* (2008) 45 Cal.4th 1, 26 (*Lindberg*); see *Foster*, *supra*, 50 Cal.4th at p. 1332.)  "We presume the jury followed these instructions."  (*Lindberg*, at p. 26.)

## C.    No Abuse of Discretion in Admission of Uncharged Crime

On appeal, Goodman argues that the trial court's admission of his uncharged theft offense was an abuse of discretion because it was insufficiently similar to the charged burglaries to prove intent.  He further asserts that it was more prejudicial than probative under section 352, implicating his constitutional rights to due process and a fair trial.  We find no merit to these claims.

Goodman contends that the only similarity between the uncharged Walmart incident and the two burglaries is that, in all three cases, Goodman (or his associate) entered a building.  He argues that the offenses are insufficiently similar because the methods of entry, the conditions inside, and

11

the items acquired were all different. Goodman takes too narrow a view of these related events.

The uncharged crime and the two charged crimes were all opportunistic and unsophisticated. All evinced an intent to steal property from others when it could be done furtively. In the Walmart incident, Goodman appears to have believed, incorrectly as it turns out, that he could steal a few items unobserved amidst the other shoppers. In the December 2018 burglary, Rascon was startled when confronted by A.S. and both defendants quickly withdrew. In the April 2017 burglary, Goodman testified that he was surprised to find C.D. in her apartment because there "wasn't supposed to be" anyone home. That nothing was stolen in the two burglaries in contrast to the shoplifting incident is more a testament to *when* the plot to steal was foiled than to a dissimilarity between these offenses.

At bottom, the jury was tasked with deciding whether Goodman accidentally entered C.D.'s apartment with no intent to steal and only intended to take a discarded cigarette butt from A.S.'s yard, or whether he committed these burglaries intending to steal property from others. Under the circumstances, we conclude Goodman's shoplifting conduct was sufficiently similar to support an inference that, when Goodman stole items from Walmart, entered C.D.'s apartment, and attempted to breach A.S.'s yard, he probably harbored the same intent—to steal something quickly and furtively.

Nor are we persuaded that the trial court abused its discretion in concluding that admission of the Walmart incident was unduly prejudicial. Goodman argues that, given its lack of similarity, the Walmart evidence had little probative value other than to improperly suggest that he had a propensity to steal. He contends that, without the Walmart evidence, it

12

would have been difficult for the prosecution to prove beyond a reasonable doubt that he had an intent to steal in the two charged offenses. And he argues generally that such evidence is more prejudicial than probative because it has the tendency to persuade the jury to decide the questions before it based on extraneous or inflammatory facts.

We recognize that admission of other crimes evidence is inherently risky, and thus such " 'offenses are admissible only if they have *substantial* probative value.' " (*Foster*, *supra*, 50 Cal.4th at p. 1331.) However, we have already concluded that the Walmart shoplifting incident is sufficiently similar to the charged burglaries to provide relevant evidence of intent in this case. As stated above, that the evidence may have been damaging to Goodman's defense does not make it prejudicial for purposes of section 352.

We also conclude that evidence of the prior shoplifting incident was unlikely to evoke in the jury an emotional bias against Goodman or create a risk of undue prejudice. The prior theft evidence was significantly less inflammatory than the charged conduct, where homes were breached while the residents were present. The prior theft occurred in between the charged burglaries and was therefore not attenuated by time. Goodman was convicted of the shoplifting incident, leaving no possibility that the jury would convict here so it could punish him for the prior theft. The evidence of the Walmart incident was presented by the brief testimony of a single, independent witness and was unlikely to be confusing to the jury. Finally, the jury was repeatedly instructed by the trial court regarding the limited purposes for which the shoplifting evidence could be considered and was expressly cautioned not to conclude from the evidence "that the defendant has a bad character or is disposed to commit crime." The jury was also instructed that it should consider how similar or dissimilar the uncharged

13

crime was.  Thus, the jury was free to conclude that there was insufficient evidence of intent and to accept Goodman's version of events.  It did not do so. Accordingly, we conclude that Goodman had not demonstrated that the trial court abused its discretion in allowing admission of the prior petty theft evidence.[3]

### III.  DISPOSITION

The judgment is affirmed.

---

[3] Given this conclusion, we also reject defendant's contention that the admission of the uncharged theft violated his constitutional rights to due process and a fair trial.  "We have long observed that '[a]pplication of the ordinary rules of evidence generally does not impermissibly infringe on a . . . defendant's constitutional rights.' " (*Lindberg, supra*, 45 Cal.4th at p. 26.) Goodman has not explained to us how his case presents an exception to this general rule.

_____

SANCHEZ, J.


We concur.


_____

MARGULIES, ACTING P.J.


_____

BANKE, J.


(A157559)

15