Filed 9/18/14  P. v. Viramontes CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARMANDO VIRAMONTES,<br><br>    Defendant and Appellant. | B252616<br><br>(Los Angeles County Super. Ct.<br> No. SA080761) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Yun K. Lee, Deputy Attorney General, and Peggy Z. Huang, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant and appellant Armando Viramontes was convicted by a jury on four counts of lewd and lascivious acts upon a child under the age of 14 with substantial sexual conduct (Pen. Code, §§ 288, subd. (a), 1203.066, subd. (a)(8)). Defendant waived his right to a jury on the prior conviction allegations and the court found true the allegations that defendant suffered two convictions within the meaning of the three strikes law (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), two prior serious felony convictions (Pen. Code, § 667, subd. (a)(1)), and two prior sex crime convictions (Pen. Code, §§ 667.51, subd. (a), 667.6, subd. (a)). The court also found true the allegation that defendant served a prior prison term for a sex crime conviction (§667.5, subd. (a)), and served two prior prison terms for sex crime convictions (§ 667.6, subd. (b)). The court found true the allegation that defendant served two prior prison terms (§ 667.5, subd. (b)), but granted the prosecutor's motion to dismiss those findings at the time of sentencing. Defendant was sentenced to state prison for a term of 340-years-to-life.

Defendant contends on appeal that the his convictions must be reversed for improper and prejudicial admission of prior offenses pursuant to Evidence Code section 1108. Defendant further contends his convictions must be reversed because admission of propensity evidence under Evidence Code section 1108 deprived him of his right to a fair trial and violated his rights of due process and equal protection. We affirm the judgment.

## FACTS

Cassidy R. was born in 1995 and was 18 years old at the time of trial. When Cassidy was about five to eight years old, she lived with her aunt Karen R. in Malibu Canyon. Karen's boyfriend, defendant, lived at the Malibu house with Cassidy, Karen, and her children from September 2000 to November 2001. Defendant never disclosed his prior sexual abuse issues to Karen, and she never witnessed any inappropriate behavior.

2

Karen worked two jobs and often left Cassidy alone with defendant, who was responsible for putting the children to bed at night. Defendant touched Cassidy inappropriately on more than two occasions. Cassidy became afraid defendant would touch her again when she was about to fall asleep at night. Cassidy remembered the details of only two incidents because they were the worst.

On one occasion, defendant laid down next to Cassidy as she was falling asleep on a couch in the living room. Defendant pulled up her T-shirt and touched her chest. He then pulled down her underwear and rubbed his penis on her vagina and butt. Defendant told Cassidy to rub his chest, waist, and legs. Cassidy did as defendant directed her. He placed his hands on her face and grabbed her thighs and moved her into other positions. Defendant told Cassidy he would hurt Karen if Cassidy said anything about what he had done. Soon after, Cassidy told Karen that she did not want defendant to put her to bed anymore. However, Karen brushed her off because she assumed Cassidy just did not want to go to bed.

On another occasion, defendant again laid down next to Cassidy as she was falling asleep on the couch. He rubbed his penis to her vagina and butt on the outside of her clothing. Defendant told Cassidy to put her hands on his chest and touch him, but she refused and pulled her hands away. After the incident, defendant did not stay at the house as often.

Cassidy testified she knew it was defendant who had molested her because of his weight and voice. Moreover, there were no other men staying at the house.

Cassidy told her teacher, Gretchen Booth, that she was molested by defendant. When she was 14 years old, Cassidy told her mother that defendant had molested her after her mother's friend tried to hold her hand and hug and kiss her. Cassidy then reported the molestation to the police.

On July 2, 2009, Los Angeles County Sherriff's Detective Timothy MacLean was assigned to investigate Cassidy's molestation claims. Cassidy told the police she reported the molestation to her sixth grade teacher, Brandy Batz, and later talked to Booth, who was a counselor at the school.

3

On April 24, 2012, Detective MacLean interviewed defendant. The interview was recorded and played for the jury at trial. Defendant told Detective McLean that he was staying at the Malibu house with Karen for three or four nights a week. Defendant said Cassidy would "rub up" against him while she was naked and come on to him about four times a month for a six-month period. Defendant said Cassidy "touched [him] all over" always "during like sunset and night time but not late at night."

Defendant showed Detective MacLean where Cassidy grabbed his crotch. Cassidy would rub her back and buttocks against his crotch. Using his hands, defendant demonstrated how Cassidy rubbed against him. Defendant touched Cassidy, "but it was nothing horrible." Defendant placed his hands in front of Cassidy's crotch and she pushed herself against him. Defendant showed his hands to be within an inch of Cassidy's vagina, but not touching it. Cassidy touched, poked, and kicked his penis, but defendant stated that his penis never came out of his shorts. Defendant also showed Detective MacLean how Cassidy held his hands and guided them to her vagina, but defendant said he did not "let it get that far." Defendant would tell Cassidy to get off of him and to put on her clothes.

When Cassidy touched him, defendant told her not to do it. A few times, Cassidy tried to get defendant to touch her, but he put a stop to it. Defendant admitted that he touched Cassidy's vagina and butt, but he said he did not do it on purpose. Defendant denied being aroused by Cassidy rubbing against him, but he was remorseful about it. Defendant also felt remorse for not handling things better at that time or establishing a boundary. In defendant's view, "nothing really happened."

Defendant said that Cassidy called him "Chief and Daddy." Defendant thought Cassidy was looking for a father for affection. Defendant said he told Karen about Cassidy's behavior and about his past issues with child abuse because he was afraid of what had happened with Cassidy and her behavior towards him. And because of his past, he "always wanted to be supervised." Defendant told Detective MacLean that it was Cassidy who said not to tell or say anything about the incidents. Defendant did not get close to Cassidy because "things" might get started. Defendant said Cassidy's allegations

4

against him were lies and that she was confused.  He again reiterated that nothing serious happened, only some inappropriate behavior.

**Evidence of Prior Sexual Offenses**

Guadalupe S. was seven or eight years old in 1975, living with her sister. Defendant and Guadalupe's sister were dating, and he frequently came over the house. Defendant would touch Guadalupe inappropriately whenever he was at the house.  While Guadalupe slept, she would wake up and feel defendant staring at her, touching her blanket.  Defendant would lift up the blankets and pull down her pajamas and underwear. He touched Guadalupe's vagina and laid on top of her, chest to chest, and she would be unable to breath.  Guadalupe was scared and did not want to go to sleep at night, nor did she want to be in the same house as defendant.

On one occasion, Guadalupe was watching television in a bedroom when defendant laid on top of her and touched her underwear.  That night, Guadalupe was taken to the hospital by a police officer where she was examined.  Defendant was arrested shortly thereafter.

In 1991, Margaret R. was 11 years old and living with her mother, who was dating defendant.  Defendant touched Margaret inappropriately on several occasions.  On one occasion, defendant took Margaret to McDonald's and then to his house.  Margaret fell asleep in the living room and awoke to defendant touching her chest, stomach, and back. He touched Margaret over her clothes and then under her shirt.  She tried to move away, but defendant did not stop.  On another occasion, Margaret and defendant went to the movies and came back to the house.  Margaret and her three-year-old sister were alone with defendant at the house.  Margaret was sitting on the couch in the living room when defendant started to touch her chest.  She got up to get away and went to her bedroom she shares with her sister.  Defendant followed her into the bedroom.  Margaret was on the bed when defendant started touching her vagina with his hand over her underwear.

5

Margaret told her mother what defendant did to her. However, Margaret's mother did not help her and defendant continued to touch her. Eventually, her mother stopped dating defendant and Margaret did not see him again. Later, Margaret told the police what happened and received help.

**Defense**

Batz testified that Cassidy did not disclose to her that she was molested. Batz was mandated to report any allegation of molestation. The school's policy was to contact the Department of Children and Family Services and then inform the principle. If Cassidy had disclosed something that would indicate that she needed help, Batz would have referred her to a counselor. In 2007, Booth was a special education teacher, not a counselor. Liam Joyce was Cassidy's principal from April of 2002 to August of 2010. Joyce was unaware that Cassidy had made an allegation of child molestation.

## DISCUSSION

Defendant contends the trial court committed error under Evidence Code section 1108 in admitting his prior sexual misconduct with Guadalupe and Margaret. He further contends admission of his prior acts of child molestation was unduly prejudicial under Evidence Code section 352. We find no abuse of discretion and hold the evidence was properly admitted.

Evidence Code section 1108 provides for admission of evidence of defendant's commission of another sex offense in a prosecution for enumerated offenses, including those charged in the instant case. (Evid. Code, § 1108, subds. (a) and (d).) Evidence offered pursuant to Evidence Code section 1108 is subject to exclusion under Evidence Code section 352. (*Id.,* subd. (a).) Accordingly, evidence of other sexual offenses cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue

6

prejudice, confusion of issues, or misleading the jury. (Evid. Code, § 352.) This determination is entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. (*People v. Falsetta* (1999) 21 Cal.4th 903, 907, 916-919; *People v. Fitch* (1997) 55 Cal.App.4th 172, 183.)

"By reason of [Evidence Code] section 1108, trial courts may no longer deem 'propensity' evidence unduly prejudicial per se, but must engage in a careful weighing process under [Evidence Code] section 352. Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta, supra,* 21 Cal.4th at pp. 916-917.)

The trial court conducted a pretrial hearing on the issue of the admissibility of defendant's prior offenses against four victims—Guadalupe, Margaret, Paula R., and Sylvia V. The prosecutor outlined the evidence she proposed to introduce under Evidence Code sections 1101, subdivision (b),[1] and 1108. Defendant objected on the grounds that the prior sexual abuse evidence was not sufficiently similar to be probative in this case, it was unduly prejudicial pursuant to Evidence Code section 352, and it violated his right to due process under the Fourteenth Amendment.

In determining that the testimony of Guadalupe and Margaret was admissible, the trial court emphasized that Cassidy's credibility is a material issue because of the gap

---

[1] Evidence Code section 1101, subdivision (b) permits the introduction of evidence that "a person committed a crime, civil wrong or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

between the alleged incidents of sexual abuse and reporting the abuse to the police. The court found that the prior and current offenses are substantially similar because they demonstrate a pattern in which defendant dates the victim's family member and uses that relationship to gain immediate or ongoing access to the victim. The court also found that the probative value of the prior offenses outweighed the prejudicial impact. The prior offenses were not "factually dissimilar to the extent that it would simply be used . . . to inflame the jury and to unduly prejudice the defendant." In an exercise of discretion, the court only admitted testimony from Guadalupe and Margaret, and excluded the testimony from Sylvia and Paula. The court excluded defendant's conduct with Sylvia because the prosecutor failed to establish that Sylvia would testify at trial. Paula's testimony was excluded because it was unlike the other prior offenses, would be cumulative and consume an undue amount of court time.

The testimony of Guadalupe and Margaret was not excludable under Evidence Code section 352 on the basis it consumed an undue amount of time. The trial testimony regarding the prior two incidents consisted of approximately 23 pages of transcript. (See, e.g., *People v. Cabrera* (2007) 152 Cal.App.4th 695, 706 [testimony, which consisted of 97 pages of reporter's transcript, was not unnecessarily time consuming]; *People v. Frazier* (2001) 89 Cal.App.4th 30, 42 [evidence of uncharged offense that consumed 27 percent of trial transcript did not dwarf the trial of the current offense as to unfairly prejudice the defendant].) In the one instance in which the court determined there would be an undue consumption of time, involving proposed testimony by Paula, the court exercised its discretion under Evidence Code section 352 to preclude the testimony.

Other legitimate considerations favored admission of the prior offenses. The offenses are not remote in time, although "[n]o specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible. [Citation.]" (*People v. Branch* (2001) 91 Cal.App.4th 274, 284 [30-year-old prior sexual offenses not remote]; *People v. Pierce* (2002) 104 Cal.App.4th 893, 900 [23-year-old rape conviction not remote].) The gap in time between Guadalupe and Margaret was due to the court's exclusion of the two other victims, Paula and Sylvia. Paula's sexual abuse

occurred in 1981 and then Sylvia's abuse occurred from 1982 to 1987. In addition, defendant spent most of the intervening years in prison.[2] Moreover, defendant does not dispute that he committed the prior offenses against Guadalupe and Margaret, which occurred in 1975 and 1991, respectively.

The jury was instructed on the proper use of evidence of prior offenses. The jury was instructed on reasonable doubt (CALCRIM No. 220), evidence of an uncharged sex offense (CALCRIM No. 1191), and that the prosecution was required to prove each element of the charged offenses (CALCRIM No. 1110). These instructions eliminated the risk defendant would be convicted based on his conduct in the prior offenses by properly focusing the jury on the requirement that each element of the charged offense must be proven beyond a reasonable doubt. (See *People v. Frazier, supra,* 89 Cal.App.4th at p. 42.)

The record establishes the trial court carefully considered the evidence, was familiar with the applicable legal principles, and made a reasoned decision. Defendant has failed to establish that the court acted arbitrarily or beyond the bounds of reason. To the contrary, the court's ruling is an unassailable exercise of judicial discretion.

Defendant unsuccessfully attempts to analogize this case to *People v. Harris* (1998) 60 Cal.App.4th 727 (*Harris*), to support his contention that the prior offenses would impermissibly inflame the jury when offered to support Cassidy's poor credibility. The *Harris* court reversed a trial court's ruling admitting evidence of a prior offense on the basis that the defendant's prior crimes were "inflammatory *in the extreme*." In the charged incidents in *Harris*, "at worst defendant licked and fondled an incapacitated woman and a former sexual partner, both of whom were thereafter on speaking terms with him." (*Id.* at p. 738.) In the uncharged incident in *Harris*, "[the defendant] entered [the victim's apartment] at night while she was sleeping, beat her unconscious and used a

---

[2] In 1987, defendant was convicted of forcible oral copulation (Pen. Code, § 288a, subd. (c)) and sexual battery (Pen. Code, § 243.4) and sentenced to three years in prison. In 1993, defendant was convicted of a lewd act against a child (Pen. Code, § 288, subd. (a)) and sentenced to eight years in state prison.

9

sharp instrument to rip through the muscles from her vagina to her rectum, then stabbed her in the chest with an ice pick, leaving a portion of the pick inside her. Police found her beaten unconscious on the floor, bleeding heavily from the vaginal area and bleeding from the mouth and nose." (*Id.* at p. 733.) In stark contrast to this case, the crimes in *Harris* were markedly dissimilar, and the horrific nature of the prior offense was significantly greater than the crimes charged. Here, there is little meaningful distinction between the facts of the charged and prior offenses, considering the similarities in the age of the victims, defendant's relationship with a family member of the victims, and the type of acts committed against the victims. Defendant acknowledges in his opening brief that the prior offenses involved girls who had fallen asleep and awoke to find defendant touching them, and defendant was dating a family member of each victim. Moreover, the offenses against Cassidy were more egregious than the prior acts in that defendant escalated to using his penis to rub Cassidy's vagina and butt as opposed to defendant using his own hands in the incidents involving Guadalupe and Margaret. The court did not abuse its discretion in determining the two prior offenses were not impermissibly inflammatory.

Finally, defendant asserts Evidence Code section 1108 inherently denies due process of law and a fair trial and violates his equal protection rights under the Constitution. We are bound by our Supreme Court's rulings on these issues and therefore reject his arguments. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 915, 918 [rejecting due process challenge to Evidence Code section 1108 and noting with approval rejection of equal protection challenge in *People v. Fitch, supra,* 55 Cal.App.4th at pp. 184-185]; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) To the extent defendant relies on *Garceau v. Woodford* (9th Cir. 2001) 275 F.3d 769 (*Garceau*), revd. on other grounds *sub nom. Woodford v. Garceau* (2003) 538 U.S. 202, we have two observations. First, *Garceau* did not involve, and did not discuss, the constitutionality of Evidence Code section 1108. *Garceau* was a murder case, not a child molestation case, and did not address the propriety of a statute allowing for admission of prior sex acts to prove propensity or disposition. Considering the unique nature of child sexual assault

10

cases, we consider the discussion in *Garceau* inapposite to the issues raised by defendant. Second, as a decision of an intermediate federal court, *Garceau* is not binding upon the California courts. (*People v. Bradley* (1969) 1 Cal.3d 80, 86.) In light of our Supreme Court precedent, we see no reason to revisit the due process and equal protection issues raised by defendant. (*People v. Hill* (2001) 86 Cal.App.4th 273, 279.)

## DISPOSITION

The judgment is affirmed.


KRIEGLER, J.


We concur:


TURNER, P. J.


MINK, J.*

---

* Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11