Filed 3/6/17

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C078041 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F02050) |
| v. | |
| TERRY GLEN SHORTS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael A. Savage, Judge. Affirmed.

Mark David Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Terry Glen Shorts sexually assaulted and murdered 13-year-old Jessica S. in 1996, shooting her in the head and leaving her half-naked body in a park in the middle of the night. Sixteen years later, he was connected to the crime when his DNA was identified in samples taken from Jessica's body. At trial, defendant conceded that he had sexual relations with Jessica, but claimed he did not kill her. Instead, he argued that Sammy Rodriguez did it. The jury convicted defendant of the murder and sex offenses, and the trial court sentenced him to life without possibility of parole, as well as other terms.

On appeal, defendant contends the trial court: (1) improperly admitted evidence of his prior sex offenses against J.P., his ex-girlfriend, over his Evidence Code section 352 objection, (2) improperly excluded evidence of Rodriguez's propensity for violence, and (3) improperly admitted lay opinion testimony that Rodriguez did not commit the murder. Finding no prejudicial error, we affirm.

FACTS AND PROCEDURE

On the morning of February 12, 1996, 13-year-old Jessica S.'s body was found in Florin Creek Park in Sacramento. She was five feet, one-and-a-half inches tall, and she weighed 90 pounds. Jessica died of a single gunshot contact wound to the head. She also had injuries consistent with being hit in the head with the butt of a gun and being strangled. Her pants and underwear were off, and her bras (she wore two) were hiked up, exposing her breasts.

Jessica's mother said that Jessica left their home the night before at around 11 p.m. or midnight with a 14-year-old boy to go to her grandmother's house. Between 2 and 4 a.m., a woman who lived adjacent to Florin Creek Park heard a "horrible scream" from a female. She also heard a man say "stop" and "don't," as well as more screaming from the young female. About 10 minutes after the first scream, a gunshot rang out, and the screaming stopped.

2

Vaginal, rectal, and oral swabs were taken during an autopsy of Jessica's body. Sperm was found on the vaginal and rectal swabs but not on the oral swab. No trauma was noted to Jessica's vagina or anus.

Sixteen years after the murder, in 2012, the vaginal and rectal swabs were analyzed again, and defendant's DNA was collected from the sperm. Additionally, three sperm heads were found on the oral swab, but the sample did not contain enough DNA to identify or exclude defendant.

Defendant was interviewed after his DNA was identified from Jessica's autopsy. He denied knowing Jessica. When told that his DNA was found, he offered a hypothetical about girls in an abandoned house "putting themselves in situations." He said: "[W]e're all capable of things that we don't believe we would do," but he did not admit killing Jessica.

The prosecution presented evidence under Evidence Code section 1108 that defendant sexually assaulted his ex-girlfriend, J.P., less than three years before the murder of Jessica. He dragged J.P. to a car and took her to a park. Pointing a gun at her and threatening her, he strangled her, beat her, and forced her to have oral and anal sex with him.

The defense conceded that defendant had sexual relations with Jessica but claimed that he did not kill her.

A man who lived with Jessica's mother at the time of Jessica's murder testified that another man threatened to shoot at the house if he was not allowed to sleep with Jessica.

Mainly, however, the defense sought to cause the jury to have doubt about defendant's guilt by introducing evidence incriminating Sammy Rodriguez, also known as "Coyote," who was 18 years old at the time of the murder. Rodriguez testified that he had sex with Jessica once or twice before December 1995. She had told him that her name was Veronica and that she was 17 years old. In December 1995, Jessica said she

was a gang member at a party, and she was beaten. Rodriguez stayed away from her after that because he believed that the boyfriend of Jessica's mother was angry with him because Jessica blamed Rodriquez for the beating.

After Jessica's murder, Jessica's mother told the police that Rodriguez had set up Jessica to be jumped in December 1995. Rodriguez heard that Jessica's family was blaming him, so Rodriguez's attorney had him write down who he was with the weekend of Jessica's murder so that he would not forget.

Rodriguez had a .22-caliber handgun at the time Jessica was murdered.

The district attorney charged defendant by information with the following:

- Count one—murder (Pen. Code, § 187; hereafter, unspecified code citations are to the Penal Code).
    - Special circumstances—murder while committing a lewd and lascivious act on a child (§ 190.2, subd. (a)(17)(E)); murder while committing sodomy on a child (§ 190.2, subd. (a)(17)(D)); and murder while committing oral copulation on a child (§ 190.2, subd. (a)(17)(F)).
    - Enhancement allegation—personal use of a firearm (§ 12022.5).
- Count two—lewd and lascivious act on a child (§ 288, subd. (a)).
    - Enhancement allegation—personal use of a firearm (§ 12022.5).
- Count three—sodomy on a child (§ 286, subd. (c)).
    - Enhancement allegation—personal use of a firearm (§ 12022.5).
- Count four—oral copulation on a child (§ 288a, subd. (c)).
    - Enhancement allegation—personal use of a firearm (§ 12022.5).
- Strike allegation—prior conviction for aggravated assault involving great bodily injury (§ 1170.12).

Defendant admitted the prior conviction allegation, and a jury found defendant guilty on all counts and found all special circumstances and enhancement allegations true.

The trial court sentenced defendant to an indeterminate term of life without possibility of parole for the special-circumstance first degree murder of Jessica S. (§§ 187, subd. (a); 190.2, subd. (a)(17)(d), (e) & (f)) with a consecutive term of 10 years for personal use of a firearm (§ 12022.5, subd. (a)). The court sentenced defendant to determinate terms for the sex offenses against Jessica, but it stayed those terms under section 654 because they were alleged as special circumstances.

## DISCUSSION

Before we consider defendant's contentions on appeal, it is helpful to understand defendant's trial strategy in order to better comprehend his arguments on appeal. His trial strategy is best revealed in defense counsel's closing argument. Counsel noted that the killing of Jessica was first degree murder. Whoever killed her was guilty of that crime. Defendant had sex with Jessica but there was no evidence of vaginal or anal trauma, and the circumstantial evidence permits a reasonable inference that the sex offenses and the homicide did not occur at the same time and that defendant was not involved in the homicide. Except for his DNA in Jessica's body, no evidence was found in the area of the homicide connecting defendant to the location. According to the defense, someone else killed Jessica, possibly Sammy Rodriguez.

Even on appeal, defendant concedes the evidence presented "a strong prosecution case." However, his strategy at trial and on appeal is to cling to the scenario that the sex offenses against Jessica and her murder were committed by two different people—in other words, that he committed the sex offenses but someone else unconnected to him committed the murder. That is a very difficult task, given the evidence that the sex offenses and murder were virtually contemporaneous. A witness heard Jessica screaming for several minutes before she was shot. And she was found in a state that suggested that she had just been sexually assaulted.

5

## I

### *Evidence Code section 352*

Defendant contends that admission under Evidence Code section 1108 of the evidence concerning his sex offenses against J.P. over his Evidence Code section 352 objection was an abuse of discretion. We conclude the trial court properly exercised its discretion in admitting the evidence.

Evidence Code section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

In *People v. Harris* (1998) 60 Cal.App.4th 727 (*Harris*), this court identified five factors relevant to the trial court's consideration of whether the probative value of prior sexual misconduct evidence is substantially outweighed by its prejudicial effect under section 1108: (1) the inflammatory nature of the prior offense evidence; (2) the probability that admission of the evidence will confuse the jury; (3) the remoteness of the prior offense; (4) the consumption of time necessitated by introduction of the evidence; and (5) the probative value of the evidence. (*Id.* at pp. 737-740.) The trial court's ruling under Evidence Code section 1108 is subject to review for abuse of discretion. (*People v. Loy* (2011) 52 Cal.4th 46, 61.)

Before trial, defendant moved to exclude the evidence of defendant's sex offenses against J.P., citing Evidence Code section 352. The trial court engaged in a thorough analysis of Evidence Code sections 352 and 1108 and the due process factors noted in *Harris*. The court believed that defendant's strongest argument for exclusion was that the

offenses against J.P. were sex offenses against an adult, while the victim in this case was a 13-year-old child. However, the court noted that Jessica, though young, was physically mature and previously involved in adult-type activities, including those of a sexual nature. From this, the court concluded that a propensity to commit sex offenses against a physically mature and sexually active 13-year-old can be reasonably inferred from commission of such crimes against an adult woman. The court found that the similarities between the attack on J.P. and the attack on Jessica, such as nonconsensual sex, attack in a park, strangulation, oral sex, anal sex, and use of a gun, outweighed the differences, such as adult versus child. And the court concluded that the probative value of the J.P. evidence was strong. The possible prejudicial effect of the J.P. evidence, along with possible confusion of issues and possible misleading of jury, did not outweigh its probative value.

On appeal, defendant asserts that this admission of evidence was an abuse of discretion because the charges against defendant did not require the prosecution to prove that defendant committed forcible sex offenses against Jessica. Both the substantive sex offenses and the special circumstances were predicated on lack of consent based on age, rather than use of force. In defendant's argument, this difference in whether lack of consent was necessary makes the J.P. evidence superfluous, misleading, and legally confusing. We disagree.

The J.P. evidence established that defendant has a propensity for committing sex offenses. While the circumstances negating consent are different between the J.P. case (force) and this case (age), many other circumstances are similar and support the propensity inference. The J.P. evidence established that defendant, in committing a sex offense, is prone to use a gun, isolate the victim in a park, strangle the victim, and engage in oral and anal sex. That propensity is relevant to this case, regardless of how the lack of consent is established. Also, even though the special circumstance allegations were premised on age as the cause of lack of consent, the murder in commission of those

7

crimes was violent and defendant's propensity for committing violent sex offenses was relevant to whether he committed the special circumstance murder.

Furthermore, the *Harris* factors support the trial court's admission of the evidence over defendant's Evidence Code section 352 objection: (1) the evidence of the sex offenses against J.P., an adult who was not murdered, was not more inflammatory than the evidence of the crimes against Jessica; (2) there is little probability that admission of the J.P. evidence confused the jury as it was a completely separate incident; (3) the prior offense was not remote, occurring in October 1993, less than three years before the murder of Jessica; (4) admission of the evidence did not consume an unwarranted amount of trial time; and (5) as the trial court concluded, the probative value of the evidence was strong. (See *Harris, supra,* 60 Cal.App.4th at pp. 737-740.)

The trial court did not abuse its discretion in admitting the J.P. evidence over defendant's Evidence Code section 352 objection.

II

*Defense Use of Evidence Code Sections 1108 and 1109*

Defendant contends that the trial court's exclusion of defense evidence that Sammy Rodriguez had a propensity for violence interfered with his right to present a defense of third party culpability because the prosecution was allowed to present propensity evidence against him under Evidence Code section 1108. He claims that this circumstance violated his due process right to symmetry in the proceedings, citing *Wardius v. Oregon* (1973) 412 U.S. 470 [37 L.Ed.2d 82] (*Wardius*). Whether or not *Wardius* requires a court to allow a defendant to introduce propensity evidence under Evidence Code section 1108 or 1109 in a case in which the prosecution has been able to do so is not an issue we need to decide in this case because the facts of this case, even assuming defendant can take advantage of Evidence Code section 1108 or 1109, do not support admission of evidence that Rodriguez had a propensity for violence.

8

Although a defendant is constitutionally entitled to present "a complete defense" (*California v. Trombetta* (1984) 467 U.S. 479, 485 [81 L.Ed.2d 413, 419]), that right does not encompass the ability to present evidence unfettered by evidentiary rules (*People v. Brown* (2003) 31 Cal.4th 518, 538). "[T]he Constitution permits judges 'to exclude evidence that is "repetitive . . . , only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues." ' [Citations.]" (*Holmes v. South Carolina* (2006) 547 U.S. 319, 326-327 [164 L.Ed.2d 503, 510, 510] [stating evidentiary rules that preclude the admission of third party culpability evidence insufficiently connecting the third person to the crime are "widely accepted"].) When a trial court exercises its discretion to exclude evidence and does not abuse that discretion, the exclusion of the evidence (including proffered third party culpability evidence) does not impermissibly infringe on a defendant's federal constitutional rights. (*People v. Prince* (2007) 40 Cal.4th 1179, 1243.)

Under the abuse of discretion standard, we will not disturb a trial court's ruling unless discretion was exercised in an arbitrary, capricious, or patently absurd manner, resulting in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) Defendant sought to present evidence that, earlier the same month that Jessica was murdered, Rodriguez shot at his ex-girlfriend, trying to kill her, and, as a result of that incident, he was convicted on a guilty plea of assault with a deadly weapon. Defendant conceded that the evidence was not admissible as character evidence, but he sought to use it for impeachment. Counsel said: "[E]ven if all we can do is impeach[] him with assault with a deadly weapon conviction . . . then let the jury hear that conviction."

Given the chance later to further articulate the defense's position, defense counsel argued that, since the prosecution, under Evidence Code section 1108, would be able to present evidence of defendant's propensity to commit sex offenses, defendant should be able to present evidence concerning Rodriguez's propensity for violence, even if that evidence is prohibited under Evidence Code section 1101.

9

The trial court ruled that the defense could present evidence that Rodriguez had a handgun during the month Jessica was murdered and that Rodriguez was convicted of a crime involving moral turpitude, but the court denied the defense motion as to the facts of Rodriguez's shooting at his ex-girlfriend.  The court said:  "The Evidence Code requires me to examine each item of evidence proposed on the merits of that evidence and to make a determination on those grounds . . . ."

On appeal, defendant focuses on what he perceives as the lack of symmetry and balance in what the two sides can present as evidence, relying heavily on *Wardius*.

The California Supreme Court summarized the *Wardius* holding as follows:

"[In *Wardius*], the United States Supreme Court held that an Oregon statute violated the Fourteenth Amendment's due process clause in requiring a defendant to provide alibi information before trial without imposing a reciprocal discovery obligation on the state.  (*Wardius*, at pp. 474–476.)  The Supreme Court stated that '[a]lthough the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, [citation], it does speak to the balance of forces between the accused and his accuser.'  (*Id*. at p. 474.)  The high court further noted that although due process did not require Oregon to adopt any pretrial discovery provisions, if it did, 'discovery must be a two-way street.'  (*Id*. at p. 475.)

"*Wardius, supra,* 412 U.S. 470, requires only that certain discovery obligations be reciprocal.  (*People v. Yeoman* (2003) 31 Cal.4th 93, 154.)"  (*People v. Mena* (2012) 54 Cal.4th 146, 159.)

An obvious difference between this case and *Wardius* is that this case involves an evidentiary question while *Wardius* involved pretrial discovery.  We need not determine whether that difference is dispositive, however, because there is no lack of symmetry and balance in this case that would violate due process even if *Wardius* applied to evidentiary questions.

10

"Our elected Legislature has determined that the policy considerations favoring the exclusion of evidence of uncharged sexual offenses are outweighed in criminal sexual offense cases by the policy considerations favoring the admission of such evidence. The Legislature has determined the need for this evidence is 'critical' given the serious and secretive nature of sex crimes and the often resulting credibility contest at trial. [Citation.]" (*People v. Fitch* (1997) 55 Cal.App.4th 172, 181-182, fn. omitted.)

Here, the prosecution presented evidence of defendant's sex offenses against J.P. to establish defendant's propensity to commit sex offenses. Admission of that evidence was permitted by Evidence Code section 1108. On the other hand, the evidence defendant proffered to establish the propensity of Rodriguez for violence is not admissible under Evidence Code section 1108. Even if a defendant were to be permitted to use Evidence Code section 1108 in an attempt to establish third party culpability, the evidence concerning Rodriguez's shooting at his ex-girlfriend is not evidence of a prior sex offense.

Defendant argues that he should also be permitted to introduce propensity evidence under Evidence Code section 1109, which allows the prosecution to introduce evidence of a defendant's prior domestic violence to establish a propensity for domestic violence. This argument also fails because defendant cannot establish that, if Rodriguez was Jessica's killer, it was an act of domestic violence. Although there was evidence that Rodriguez previously had sexual relations with Jessica, they were never in the type of relationship covered in Evidence Code section 1109. "Domestic violence" in Evidence Code section 1109 refers to violence against someone with whom the perpetrator has or had at least a cohabiting or dating relationship. (Evid. Code, §§ 1109, subd. (d)(3), 13700; see *People v. Rucker* (2005) 126 Cal.App.4th 1107, 1116.) The evidence here established nothing more than that Rodriguez and Jessica engaged in sexual relations one or two times and that Rodriguez thought Jessica was a 17-year-old named Veronica. Therefore, Rodriguez's prior shooting at his ex-girlfriend, which could be characterized

11

as domestic violence, could not be used to establish a propensity for domestic violence resulting in the shooting of Jessica. If Rodriguez shot Jessica, it was not domestic violence.

Finally, defendant argues that he should be able to introduce any propensity evidence because the prosecution was allowed to. That argument goes well beyond the symmetry and balance required by *Wardius*. In *Wardius*, the court noted: "[I]n the absence of a strong showing of state interests to the contrary, discovery must be a two-way street." (*Wardius, supra,* 412 U.S. at p. 475.) If *Wardius* applies to evidentiary issues, which we need not determine, then allowing a defendant to introduce any and all propensity evidence because the prosecution introduced propensity evidence under Evidence Code section 1108 is well beyond the "two-way street" alluded to in *Wardius*. Most propensity evidence is inadmissible under Evidence Code section 1101, which applies with equal force to the prosecution as it does to the defense. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1159.) There is no fundamental unfairness is allowing the prosecution to introduce propensity evidence that fits under a limited statutory exception while prohibiting the defense from introducing propensity evidence that fits under no statutory exception.

Therefore, even assuming without deciding that *Wardius* applies to evidentiary issues, the trial court properly excluded evidence that Rodriguez shot at his ex-girlfriend to establish his propensity for violence.

## III

### *Admission of Opinion Evidence*

Over a defense objection, the trial court allowed Rodriguez's ex-wife to give her opinion that Rodriguez did not murder Jessica. On appeal, defendant contends the trial court erred prejudicially by admitting this evidence. We conclude that, even assuming without deciding that the trial court erred by admitting the opinion evidence, there was no prejudice.

12

Rodriguez's ex-wife, Linda Jonas, testified that she and Rodriguez lived together in 1996. She testified that Rodriguez was with her the weekend of the murder unless he left the residence while she was asleep. She took Motrin for knee problems, which caused her to sleep lightly instead of heavily, and the only way out of the residence was through the door next to her bedroom window. She could hear squeaking of the wood on the stairway from her bedroom if someone left through the front door, and she did not remember hearing it that weekend.

The prosecutor asked Jonas whether she remembered telling detectives that she had no doubt that Rodriguez was not involved in Jessica's murder. The defense objected based on speculation. The court responded that it was actually lay opinion and overruled the objection. Jonas responded affirmatively. Asked whether she told the detectives why she felt sure, she testified: "It was just a feeling that I had, and because he had been with me and my children the whole time that I can remember." She said that part of the reason for her feeling was that she did not hear the squeaking wood.

Defendant asserts this was inadmissible lay opinion testimony. We need not consider that question because admission of the evidence was not prejudicial.

Improper admission of lay opinion evidence is a state law error subject to the *Watson* test. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 131; *People v. Watson* (1956) 46 Cal.2d 818, 836.) That test asks whether it is reasonably probable the defendant would have obtained a more favorable verdict if the improper evidence had not been admitted. (*Ibid.*)

Creatively, defendant contends that admission of Jonas's lay opinion amounted to federal constitutional error because, in defendant's words, the evidence was "so prejudicially misleading" that it "place[d] so great an onus on the presentation of the defense as to amount to a violation of [defendant's] right, emanating from the Sixth and Fourteenth Amendments, to a meaningful opportunity to present a defense. [Citation.]"

13

Under the federal standard for harmless error, we ask whether the error was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 23-24 [17 L.Ed.2d 705, 710-711].)

We disagree with defendant that this asserted error in admitting lay opinion rose to a level of federal constitutional error.  If it was error, it was simple evidentiary error subject to the state standard for prejudice.  (*People v. Marks* (2003) 31 Cal.4th 197, 226-227.)

Under either standard, however, the asserted error was harmless.  Jonas testified that Rodriguez was with her the weekend that Jessica was killed and that she would have heard him leave, if he did leave, because of the squeaky wood of the stairway, unless she was asleep when he left and she did not hear him.  Asked for her opinion about whether Rodriguez killed Jessica, she said she did not believe he did, basing her opinion, at least partially, on the fact that she did not hear him leave the residence.  The addition of her lay opinion to the admissible evidence already given did not add much for the jury to consider.  It was simply consistent with the evidence that Jonas did not think Rodriquez left the residence that weekend.  The jury was just as capable as Jonas to draw, or not draw, that inference.  And there is no reason to believe that the jury relied on Jonas's opinion in making its determination.

Even assuming error in admitting the lay opinion evidence, any such error was harmless.

DISPOSITION

The judgment is affirmed.

      NICHOLSON     , Acting P. J.

We concur:

      HULL        , J.

      BUTZ        , J.