Filed 5/12/26  P. v. Flores CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JESUS EDUARDO FLORES,<br><br>    Defendant and Appellant. | A173513<br><br>(San Mateo County<br>Super. Ct. No. 24-SF-014712-A) |

Jesus Eduardo Flores appeals from a conviction of infliction of corporal injury on an intimate partner.  He contends the trial court erred in admitting lay witness testimony that bruises on the victim's neck were consistent with being strangled and marks on Flores's face were not inconsistent with having resulted from the victim's resistance.  We affirm.

## BACKGROUND

Flores was charged by information filed on January 3, 2025, with felony infliction of corporal injury on a cohabitant.  (Pen. Code,[1] § 273.5, subd. (a).)  The following facts were presented at Flores's jury trial.

At about 11:56 a.m. on October 24, 2024, a 911 dispatcher received a call from a woman saying she needed help from police and medics.  The

---

[1]  Further statutory references will be to the Penal Code unless otherwise specified.

1

recording of the call was played at trial. The caller, Jane Doe, gave her address and said, "I'm in danger. My boyfriend beat me the fuck up." She said he was still attacking her, he "knocked [her] tooth out," she was epileptic and she could not breathe. In response to the dispatcher's questions, Doe said Flores punched her in the face, she had a bruise on her neck from him choking her with his hands, and she kicked him to get him off of her.

East Palo Alto police officer Oscar Sanchez responded to the 911 call, arriving at about noon. He noted Doe's injuries and took photographs that were admitted as exhibits at trial. The photographs showed Doe's face; her mouth with a missing tooth next to a tooth chipped at the corner; and bruising on the right side of her neck. Sanchez also photographed injuries on Flores's face, described by defense counsel as looking like scratches. Subsequently, when Flores was taken to jail, Sanchez photographed an injury to his arm. An officer conducting a pat search found a tooth in Flores's jacket.[2] The parties stipulated that it was an acrylic tooth that was glued in and not removable.

On cross examination, defense counsel asked Sanchez about various injuries he did *not* observe. Sanchez testified that with a report of choking with the hands, he would look for redness or bruising throughout the whole neck area; the photograph of Doe showed a bruise on the "outer edge . . . by the end of the jawline" and going down "into the collarbone area," and Sanchez acknowledged he needed to pull Doe's sweatshirt down to get a good picture of it. Defense counsel asked if Sanchez was familiar with "the phrase, in choking situations, petechiae" and responded, "I don't know"; asked if he

---

[2] The officer testified that "on the right side of his jacket, I felt like there's something on it. So I felt like it was stone or something like that. [¶] . . . [¶] . . . When I pulled it out, it seemed like it was a teeth [sic]."

saw "red spots" in Doe's eyes, he said, "I don't believe so." He agreed that with a reported punch to the face he would look for redness, swelling, bruising and cuts in the area of the punch, and that he did not see any of these. He also acknowledged that he labeled the photograph of Flores's arm "bite mark" when he uploaded it to the computer system.

Sanchez then testified on redirect that a person's bodily response to a punch would vary depending on factors like the force of the punch and defensive moves by the victim, that swelling and bruising can develop at a later time, that the injuries to Doe's neck appeared consistent with someone who had been strangled and that the injuries on Flores's face were not inconsistent with what a perpetrator might receive from a victim resisting being strangled.

The court took judicial notice of the fact that Flores had been convicted of domestic violence on February 27, 2015, and told the jury this was evidence it could consider.

The jury found Flores guilty on March 13, 2025. On April 11, 2025, he was sentenced to the middle term of three years.[3] He filed a timely notice of appeal on June 9, 2025.

## DISCUSSION

Flores contends the trial court abused its discretion in admitting Sanchez's testimony that Doe's injuries were consistent with being strangled and that Flores lacked injuries suggesting he acted in self-defense. He maintains this testimony was critical to the People's case because it suggested he was the aggressor and reduced the likelihood he would be

---

[3] Flores was on probation at the time of the present offense and the court imposed a concurrent 16 months on the trailing probation violation.

3

convicted of the lesser included offense of battery.  He reasons that the jury was more likely to find him guilty of the greater offense if it believed he strangled her and, conversely, more likely to find only the lesser offense if it believed her bruises resulted from "scratching and slapping rather than strangulation."

## I.

### *Additional Background*

Section 273.5, subdivision (a) provides that "[a] person who willfully inflicts corporal injury resulting in a traumatic condition upon a victim described in subdivision (b) is guilty of a felony . . . ."  There is no dispute that Doe is a victim within the meaning of subdivision (b).  Flores's claims relate to the determination that he willfully inflicted corporal injury resulting in a traumatic condition.  The statute defines "traumatic condition" as "a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force.  For purposes of this section, 'strangulation' and 'suffocation' include impeding the normal breathing or circulation of the blood of a person by applying pressure on the throat or neck."  (§ 273.5, subd. (d).)

In addition to instructions pertaining to this offense, the jury was instructed on the lesser included offense of battery against a person with whom the defendant has or had a dating relationship (§ 243, subd. (e)(1)).  A battery is "any willful and unlawful use of force or violence upon the person of another."  (§ 242.)  "The slightest touching can be enough to commit a battery if it is done in a rude or angry way."  (CALCRIM No. 960.)  The force " ' "need not be violent or severe, it need not cause bodily harm or even pain, and it

4

need not leave any mark." ' " (*People v. Myers* (1998) 61 Cal.App.4th 328, 335.)

Doe did not testify and the People's case was built on her 911 call and the evidence of her injuries. Flores attempted to show the documented injuries were not what would be expected if Doe was strangled and punched as she reported, arguing the bruising on Doe's neck was on only one side, not in the area of her windpipe; there was no redness, swelling, bleeding or cut indicative of a punch to the mouth; and there was no evidence she lost the acrylic tooth during this incident rather than another time. Defense counsel also offered an alternative theory of the incident suggesting Flores acted in self-defense against an assault by Doe: Based on the photograph of the injury to Flores's arm that Sanchez titled "bite mark," defense counsel argued the bruise on Doe's neck matched a scenario in which Doe was biting Flores's arm and he used his free hand to knock her off. Counsel suggested that this scenario would also account for Doe losing the acrylic tooth, which could have come out if Flores knocked her off while she was biting his arm since it was only glued in, and that her other tooth could have been chipped when the acrylic one was "ripped out." Counsel emphasized the jury instruction directing the jury that if circumstantial evidence supports a reasonable conclusion pointing to innocence and another pointing to guilt, the jury must choose the one pointing to innocence. (CALCRIM No. 224.)

## II.

### *Analysis*

### A. The Trial Court Did Not Abuse Its Discretion

"A lay witness may testify to an opinion if it is rationally based on the witness's perception and if it is helpful to a clear understanding of his testimony. (Evid. Code, § 800.)" (*People v. Farnam* (2002) 28 Cal.4th 107,

5

153.) The witness must have a foundation for the opinion. (See *People v. Navarette* (2003) 30 Cal.4th 458, 493-494 [no foundation for testimony of witness, who had not seen people on drugs, that defendant appeared to be under influence of cocaine].) Lay opinion testimony must address matters within common experience. (*People v. Phillips* (2022) 75 Cal.App.5th 643, 684.) We explained in *Phillips,* " 'testimony that another person was intoxicated [citation] or angry [citation] or driving a motor vehicle at an excessive speed [citation] conveys information to the jury more conveniently and more accurately than would a detailed recital of the underlying facts. But unlike an expert opinion, the subject matter of lay opinion is "one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness," and requires no specialized background.' " (*Id.* at p. 682.) We review trial court rulings on the admission and exclusion of evidence under the abuse of discretion standard. (*People v. Thompson* (2010) 49 Cal.4th 79, 128.)

Flores argues Sanchez's testimony that the bruising on Doe's neck was consistent with being strangled was improper because it exceeded his personal knowledge. The injury was documented by a photograph the jury was able to examine. On direct examination, Sanchez simply testified that the photograph accurately depicted the injury he saw on Doe's neck on the day of the incident. The testimony Flores challenges was elicited on redirect, in response to a line of defense questioning on cross examination. Defense counsel asked Sanchez whether, given a report of choking with the hands, he would be looking for "redness or bruising . . . around that windpipe area," and Sanchez said yes. Defense counsel then asked if such redness or bruising in the windpipe area is what Sanchez "would expect to see," the prosecutor objected on grounds of speculation and lack of foundation, and the court

6

sustained the objection. Defense counsel went on to ask where Sanchez would look for redness and bruising with reported choking by the hands and Sanchez testified he would look "throughout the whole neck area." Defense counsel elicited Sanchez's confirmation that Doe's bruising went from the end of her jawline to her collarbone, that Sanchez did not photograph the "middle area where the windpipe is" and that he would have wanted to document injuries he saw in that area. On redirect, referring back to this line of defense questioning, the prosecutor asked Sanchez if the injuries to Doe's neck appeared consistent with having been strangled.

Flores maintains that "all the different ways that strangulation may manifest itself in the victim" are not common knowledge and the People did not establish Sanchez had sufficient personal knowledge of the manifestations of strangling to offer the opinion that Doe had been strangled. But Sanchez did not purport to describe all the potential manifestations of strangulation, nor did he testify that Doe's injuries led him to believe Doe *was* strangled. He testified only that the injuries to Doe's neck were consistent with having been strangled.

Defense counsel's cross examination implies recognition that Sanchez would have knowledge of the sort of injuries that might be seen on a victim who someone choking her with their hands. While a layperson may not know all the possible physical manifestations of strangulation, experience with bruises resulting from pressure against the body is so common that it is unlikely the average person would not recognize that bruises might be left by hands applying pressure to the neck. It is also well within common experience that pressure to a person's body will not *necessarily* result in bruises, that the amount of pressure applied will affect whether there is bruising and how much, and that the amount of bruising may not be

7

consistent across all areas. Sanchez did not testify that Doe's bruises showed she was in fact strangled, only that they were *consistent* with being choked by hands. The testimony served to rebut the inference the defense attempted to establish on cross examination, that Doe's injuries were *inconsistent* with having been strangled because they were only on one side of her neck. Sanchez's testimony that the injury was consistent with Doe's report of having been choked was "[r]ationally based on [his] perception" and "[h]elpful to a clear understanding of his testimony." (Evid. Code, § 800; *People v. Farnam, supra,* 28 Cal.4th at p. 153.)

The same is true with respect to Flores's challenge to the testimony that his facial injuries were not inconsistent with "injuries a perpetrator may have when someone is trying to stop them from strangling them."[4] As with

---

[4] Confusingly, Flores's briefs often phrase his argument in a way suggesting he is challenging opinion testimony that would seem to support his defense. Flores maintained at trial that he did not strangle Doe and was defending himself from an assault by her; he challenges Sanchez's testimony that the marks on his face were *not inconsistent* with Doe resisting being strangled because marks that were not *consistent* with Doe trying to resist would support an inference that Flores was not strangling her.

Flores's briefs, however, seem to characterize the challenged testimony as an opinion that the marks on Flores's face were *not consistent* with Doe having tried to stop him from strangling her. For example, he refers to Sanchez opining that "[Flores] Lacked Injuries Suggesting that Doe had Defended Herself," "the marks on [Flores's] face were not consistent with Doe having tried to stop [Flores] from strangling her" and "[Flores] did not have marks on his face suggesting that Doe had resisted being strangled." The title of one section of Flores's brief refers to Sanchez's opinion that Flores "Did not Have any Injuries Suggesting that he Acted in Self-Defense," but the argument itself refers to the opinion as stating Flores's injuries "were not consistent with Doe having tried to stop [Flores] from strangling her."

Despite this confusion, we understand Flores to be challenging Sanchez's testimony that Flores's facial injuries were *not inconsistent* with having been inflicted by Doe in the course of resisting being strangled, thus supporting a conclusion that Flores did strangle her.

the testimony about Doe's neck bruising, the discussion of Flores's injuries was primarily on cross examination and redirect; on direct examination, Sanchez testified only that he photographed injuries and that the photograph marked as Exhibit 7 was an accurate depiction of what he observed. On cross examination, Sanchez agreed with defense counsel's description of the photograph as showing what "look[ed] like scratches down the side of [Flores's] face."

On redirect, the prosecutor asked if Flores's injuries were consistent or inconsistent with defensive wounds and Sanchez responded (over objection) "It could be both ways." The prosecutor then asked, "In terms of what you know about injuries and what you're looking for, in terms of someone who's being strangled, have you learned to look for injuries that a perpetrator may have when someone is trying to stop them from strangling them?" Sanchez said yes, and the prosecutor asked, "[W]ere the marks you saw on the defendant's face inconsistent with that?" Sanchez said no.

As with the testimony concerning Doe's bruises, Sanchez did not testify he believed the scratches on Flores's face in fact resulted from Doe trying to stop his assault, only that they were consistent with having been inflicted this way. Flores thus overstates the testimony in arguing, for example, that Sanchez's testimony lacked foundation because he did not say what "characteristics of these defensive wounds . . . convinced him that appellant had defensive wounds on his face."[5] Sanchez did not testify that he was

---

[5] "Defensive wounds" generally refers to wounds sustained by a victim struggling against an assault. (See *People v. Morales* (2020) 10 Cal.5th 76, 94 [lack of defensive wounds indicated victim taken by surprise]; *People v. Barrett* (2025) 17 Cal.5th 897, 914, 965 [absence of defensive wounds on defendant supported finding stabbing was premeditated murder rather than self-defense in a fight].) Given that Flores is challenging Sanchez's testimony because he sees it as supporting a conclusion that he strangled Doe, we

"convinced" Flores had wounds on his face resulting from Doe's attempting to resist being strangled.

We fail to see how Sanchez's testimony on this point exceeded common experience. It takes no familiarity with specific instances of one person strangling another to conclude that the victim's efforts to resist *could* result in scratches to the perpetrator's face. Sanchez never testified that he concluded that Flores's facial injuries were caused in this manner. Indeed, when the prosecutor first asked if the injuries on Flores's face were "consistent or inconsistent with defensive wounds," Sanchez responded, "It could be both ways."

Flores insists there was no foundation for Sanchez's opinions, as there was no evidence he had specific prior experience or training from which he learned what injuries to a victim would result from strangulation or how to determine whether a perpetrator's injuries resulted from a victim's resistance. Sanchez testified that he had responded to complaints of domestic violence more than 20 times and had been the lead investigating officer in approximately "15-plus" of these, and that he had "learned to look for injuries that a perpetrator may have when someone is trying to stop them from strangling them." Flores is correct that there was no testimony as to Sanchez's experience with strangling situations specifically. As we have said, however, no particular experience is needed to recognize that bruises on the side of the neck are consistent with the person being strangled or that scratches on a person's face are not inconsistent with a perpetrator being

_____

understand him to be using "defensive wounds" to describe injuries inflicted on him by Doe in trying to resist being strangled rather than injuries he sustained while trying to resist an assault by her, the presence of which would support his claim of self-defense.

10

scratched by a victim struggling to avoid being strangled. Indeed, by asking Sanchez on cross examination what injuries he would look for with a victim reporting being choked, defense counsel implicitly acknowledged the officer had a basis for recognizing injuries consistent with being strangled.

In any event, to the extent there was any error in admitting Sanchez's testimony, it was harmless. "Improper admission of lay opinion evidence is a state law error subject to the *Watson* test" which "asks whether it is reasonably probable the defendant would have obtained a more favorable verdict if the improper evidence had not been admitted." (*People v. Shorts* (2017) 9 Cal.App.5th 350, 362; *People v. DeHoyos* (2013) 57 Cal.4th 79, 131; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Here, there is no reasonable probability the jury would have found Flores not guilty, or guilty of only the lesser offense of battery, absent Sanchez's testimony that Doe's neck bruises were consistent with being strangled and Flores's injuries were not inconsistent with her struggling against being strangled.[6]

Notwithstanding the absence of live testimony from Doe, the People's case was strong. The recorded 911 call reflects distress in Doe's voice, and

---

[6] Flores contends he was denied a fundamentally fair trial because Sanchez's testimony invaded the province of the jury, triggering the more stringent test for prejudice due to constitutional error (*Chapman v. California* (1967) 386 U.S. 18, 24). We are not persuaded. As a general rule, " 'violations of state evidentiary rules do not rise to the level of federal constitutional error.' (*People v. Benavides* (2005) 35 Cal.4th 69, 91.)" (*People v. DeHoyos, supra,* 57 Cal.4th at p. 120.) Sanchez's testimony did not purport to conclusively establish any fact or even that he had concluded the bruising on Doe's neck was the result of being strangled or Flores's facial injuries were inflicted by Doe struggling against Flores strangling her. Sanchez testified only that Doe's bruises and Flores's facial injuries were consistent, or not inconsistent, with Doe being strangled, and as to Flores's injuries, Sanchez testified that "it could go either way." Flores does not explain how this testimony rises to the level of invading the province of the jury.

there are sounds of Doe struggling to breathe and coughing throughout; at several points the dispatch operator tells Doe, "Slow down. Take a deep breath. [¶] . . . [¶] . . . I want you to slow down and take a deep breath. It sounds like you're not getting enough air. [¶] . . . [¶] . . . Just take a deep breath." The photographs of Doe's injuries support her statements that Flores choked her, punched her, and knocked out a tooth. The photograph of her mouth also showed a piece missing from the tooth next to the gap where the acrylic tooth used to be. Doe's coughing and difficulty breathing during the 911 call provide circumstantial corroboration of her having been choked or strangled. While there was no other independent proof that these injuries were sustained in the way Doe claimed, the audible distress in her voice supports the conclusion that Doe's report was real, not manufactured.

Flores argues it was more likely the jury would find he inflicted the traumatic injury required to prove the domestic violence charge if it believed he strangled Doe, and more inclined to find he committed a simple battery if it believed the bruising on Doe's neck resulted from scratching and slapping. The jury certainly would have understood the section 273.5 offense to require a more significant injury than that required for battery, which the jury was instructed did not require *any* injury and could be established by the "slightest touching . . . if it is done in a rude or angry way." But that does not mean it is reasonably probable the jury would not have found Flores guilty of the greater offense if it had not heard the challenged testimony. Conviction for violation of section 273.5 does not require proof of a serious injury or any particular amount of force. (*People v. Silva* (1994) 27 Cal.App.4th 1160, 1166 ["defendant who inflicts only 'minor' injury violates the statute"].) The jury was instructed that a "traumatic condition is a wound or other bodily injury, *whether minor or serious*, caused by the direct application of physical force."

12

(Italics added.) Thus, the jury did not need to believe Flores committed a particularly violent act to conclude he inflicted a traumatic injury within the meaning of this offense.

But the photograph of Doe's neck shows considerable bruising, and this was not the only injury shown by the evidence: Doe reported Flores punching her in the face and knocking out her tooth, and the photograph of her mouth also showed a piece missing from the tooth next to the gap where the acrylic tooth used to be. The injuries shown by the evidence clearly resulted from more than a slight touching, making it unlikely jurors would have rejected the greater offense even if it was not convinced Flores choked Doe as she reported.[7]

Moreover, even if the jury would have been more likely to find Flores guilty of the section 273.5 offense if it believed he strangled Doe, this does not mean it is reasonably probable the jury would *not* have found him guilty without Sanchez's testimony. The recording of Doe's 911 call, in which she said Flores "beat [her] the fuck up," choked her, punched her in the face and knocked her tooth out, gave the jurors a basis for assessing the credibility of her report. As we have said, no particular expertise was necessary to evaluate whether the bruising on Doe's neck appeared consistent with her being choked, and the jury was instructed it was not required to accept

---

[7] Flores attempts to minimize the significance of the missing acrylic tooth, suggesting it is unlikely the jury would have seen its loss as a traumatic injury because, since it was only glued into her mouth, it would have required less force to dislodge than a natural tooth and it could be glued back in. Still, as the jury was informed, the tooth was not removable. Given that the tooth was intended to be permanently fixed in Doe's mouth, there is no reason the jury could not have concluded that knocking it out constituted "direct application of physical force" causing at least minor injury. (§ 273.5, subd. (d).)

13

witnesses' opinions as true and could give the opinions whatever weight the jury thought appropriate. The jurors were able to examine the photographs and evaluate for themselves counsels' competing arguments about the inferences to be drawn from them.[8] If the distress and difficulty breathing evident in the 911 call, combined with the photographs of Doe's injuries, was insufficient to convince the jurors that Flores choked Doe, it is unlikely they would have been persuaded otherwise, beyond a reasonable doubt, due to Sanchez's testimony that her bruises were consistent with being strangled.

Nor is there a reasonable probability that, without Sanchez's opinion testimony, the jury would have concluded the prosecution failed to meet its burden of proving Flores did not act in self-defense. Flores argues the jury would have been less inclined to believe he acted in self-defense if it believed he strangled Doe, and less likely to conclude he strangled her if Sanchez had not testified that the marks on Flores's face were not inconsistent with her trying to prevent him from doing so. As to the latter, the testimony about Flores's facial injuries was surely less compelling than the testimony about Doe's bruises, and therefore even less likely to convince an otherwise unconvinced jury that Flores did strangle Doe. As for self-defense, Flores gave the jury no reason to consider his facial injuries relevant. Flores did not rely on the scratches to his face as affirmatively supporting a possible self-defense scenario.[9] Instead, the theory suggested at trial was built on the

---

[8] For example, defense counsel suggested that the photo of Doe's face (Exhibit 2) looked like "acne, or rosacea, or some other skin condition" rather than bruising; the prosecutor argued the photograph of Flores's arm (Exhibit A) was "blurry," it was not clear the mark it showed was a bite mark, and whatever it was appeared to be something "healed" rather than "new."

[9] The prosecutor's closing argument raised the possibility jurors might wonder whether Flores's facial injuries indicated he acted in self-defense and

14

photograph of Flores's arm that Sanchez had labeled "bite mark":  Defense counsel argued that Flores could have pushed Doe away while she was biting his arm, the palm and thumb of the hand he pushed her with could have caused the bruises on her neck, her acrylic tooth could have come out when she was "clamped down on his arm and he hit[] her off," and her other tooth could have been chipped as the acrylic one was "being ripped out."[10]

In short, there is no reasonable probability the jury would have returned a more favorable verdict in the absence of the challenged opinion testimony.

## DISPOSITION

The judgment is affirmed.

---

urged them not to draw this conclusion, but defense counsel did not argue the contrary.  Defense counsel argued only that the marks did not prove Flores strangled Doe.

[10] Sanchez did not testify that the injury was in fact a bite mark.  After he confirmed that he titled the photograph "bite mark," when defense counsel asked him to confirm that the photograph was of the "bite mark you observed on my client's arm on the date of this incident," Sanchez responded, "Of the injury, yes."

STEWART, P. J.


We concur.


RICHMAN, J.


DESAUTELS, J.


*People v. Flores* (A173513)